# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

BOBAN TEMELKOSKI,

Defendant-Appellee.

FOR PUBLICATION
October 21, 2014
9:05 a.m.

No. 313670
Wayne Circuit Court
LC No. 94-000424-FH

Before: BORRELLO, P.J., and WHITBECK and K. F. KELLY, JJ.

PER CURIAM.

This case is before this Court for consideration as on leave granted.[1] The people contend that the trial court erred in granting defendant's motion to be removed from the sex offender registry under the Sex Offender Registration Act (SORA), MCL 28.721 *et seq*. For the reasons set forth in this opinion, we reverse.

## I. FACTS & PROCEDURAL HISTORY

In 1994, defendant, then age 19, was charged with second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (person under 13 years of age). The charge arose from an incident where defendant kissed and groped a 12-year-old female. The facts and circumstances of the incident are disputed.

On March 4, 1994, defendant pleaded guilty to CSC-II. Defendant was adjudicated under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq*., and sentenced to three years' probation. On April 16, 1997, upon successful completion of probation, the trial court dismissed the case and defendant did not have a conviction on his record. However, defendant was required to register as a sex offender pursuant to the SORA, which took effect after defendant pleaded guilty. See MCL 28.723(1)(b); MCL 28.722(w)(*v*). Under the current version of the SORA, defendant is required to register as a sex offender for life. See MCL 28.722(w)(*v*) (CSC-II involving a minor under age 13 is a "Tier III" offense); MCL 28.725(12) ("Except as otherwise provided . . . a Tier III offender shall comply with this section for life.")

---

[1] *People v Temelkoski*, 495 Mich 879; 838 NW2d 698 (2013).

-1-

On August 9, 2012, defendant filed a motion seeking removal from the sex offender registry. Citing *People v Dipiazza*, 286 Mich App 137; 778 NW2d 264 (2009), defendant argued that requiring him to register as a sex offender when he does not have a conviction for a sex offense constitutes cruel or unusual punishment. Defendant argued that, like in *Dipiazza*, he engaged in a consensual act with the complainant. Defendant further claimed that his status as a sex offender caused him difficulty gaining employment and adversely affected his ability to father his children and caused depression. Defendant attached a psychological risk assessment conducted by a licensed psychologist who opined that defendant is at a low risk for reoffending and that he does not meet the clinical classification of a pedophile or sexual predator.

In opposing the motion, the prosecution claimed that it was well-settled law that the SORA's registration and reporting requirements do not constitute "punishment" in the constitutional sense, and therefore, the requirements did not violate the constitutional proscriptions against cruel or unusual punishment. The prosecution further argued that *Dipiazza* was limited by *In re TD*, 292 Mich App 678; 823 NW2d 101 (2011), vacated 493 Mich 873; 821 NW2d 569 (2012), and that the circumstances of the underlying offense were unlike the circumstances in *Dipiazza* making the case distinguishable.

On September 21, 2012, the trial court granted defendant's motion, stating:
> One, Holmes Youthful Trainee is not a conviction, and it's not subject to S.O.R.A. That's – it may be in the face of the law that you have, but that's my ruling.
>
> Second thing is, this is an ex post facto law. He was not subject to the law at the time that he was sentenced. All of a sudden, they pass a law later saying that he has to register. []
>
> And thirdly, I'll make a ruling, so that you have a proper record for the Court of Appeals. This is a punishment . . . I'm gonna grant the motion to remove him from the Sex Registry.

On December 4, 2012, the prosecution filed a delayed application for leave to appeal in this Court, arguing that the trial court erred in: (1) holding that registration on the sex offender registry amounted to punishment, (2) holding that the punishment was cruel or unusual, and (3) holding that SORA violated the Ex Post Facto Clause.

After this Court denied the prosecution's application for leave to appeal,[2] in lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration "as on leave granted." *People v Temelkoski*, 495 Mich 879; 838 NW2d 698 (2013).

## II. STANDARD OF REVIEW

---

[2] *People v Temelkoski*, unpublished order of the Court of Appeals, entered July 8, 2013 (Docket No. 313670).

"We review constitutional issues de novo." *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *In re Ayres*, 239 Mich App 8, 10; 608 NW2d 132 (1999). "The party challenging a statute has the burden of proving its invalidity." *Id*. To the extent we must interpret the applicable statutory provisions, issues involving statutory interpretation are questions of law that we review de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

## III. LEGAL BACKGROUND

### A. RELEVANT STATUTES

Under the HYTA, when a defendant between the ages of 17 and 21 pleads guilty to certain criminal offenses, [3] "the court of record having jurisdiction of the criminal offense, may, without entering a judgment of conviction . . . consider and assign that individual to the status of youthful trainee." MCL 762.11(1). "An assignment to youthful trainee status does not constitute a conviction of a crime unless the court revokes the defendant's status as a youthful trainee." *Dipiazza*, 286 Mich App at 141-142, citing MCL 762.12. In the event the defendant successfully completes his or her HYTA assignment, the court "shall discharge the individual and dismiss the proceedings," MCL 762.14(1), and, "all proceedings regarding the disposition of the criminal charge and the individual's assignment as a youthful trainee shall be closed to public inspection." MCL 762.14(4). However, an individual assigned HYTA status "*before* October 1, 2004, for a listed offense enumerated in section 2 [MCL 28.722] [of the SORA],[4] is required to comply with the requirements of [the SORA]." MCL 762.14(3) (emphasis added).

The SORA was enacted in 1994 and took effect on October 1, 1995. 1994 PA 295. In relevant part, subject to certain exceptions, the SORA requires the following individuals to register as sex offenders:

(a) An individual who is convicted of a listed offense after October 1, 1995.

(b) An individual convicted of a listed offense on or before October 1, 1995 if on October 1, 1995 he or she is on probation or parole, committed to jail, committed to the jurisdiction of the department of corrections, or under the jurisdiction of the juvenile division of the probate court or the department of human services for that offense. . . . [MCL 28.723(1).]

The SORA defines "convicted" in relevant part as follows:

---

[3] Pursuant to a 2004 amendment, the HYTA no longer applies to individuals who plead guilty to CSC-II, and other offenses. See MCL 762.11(2).

[4] CSC-II involving a person less than 13 years of age is a listed Tier-III offense for purposes of the SORA. MCL 28.722(k); MCL 28.722(w)(*v*).

(i) Having a judgment of conviction or a probation order entered in any court having jurisdiction over criminal offenses . . . .

* * *

(A) *Being assigned to youthful trainee status . . . before October 1, 2004.* [MCL 28.722(b) (emphasis added).]

"The SORA, as it was first enacted, was designed as a tool solely for law enforcement agencies, and registry records were kept confidential." *Doe v Mich Dep't of State Police*, 490 F3d 491, 495 (CA 6, 2007). "As of September 1, 1999, however, the SORA was amended to create the [public sex offender registry (PSOR)] which can be accessed by anyone via the internet." *Id.*; see MCL 28.728(2). Generally, offenders required to register under the SORA are included on the PSOR,[5] MCL 28.728(2), and the PSOR lists "names, aliases, addresses, physical descriptions, birth dates, photographs, and specific offenses. . ." of registered offenders. *Dipiazza*, 286 Mich App at 143.

The Sixth Circuit Court of Appeals explained the interplay between the SORA and the HYTA as follows:

When the Michigan legislature enacted the SORA, it also amended the HYTA to provide that even individuals assigned to youthful trainee status were required to register as sex offenders . . . . This . . . provision is in effect an exception to HYTA's general provision . . . that "[u]nless the court enters a judgment of conviction against the individual . . . all proceedings regarding the disposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection." []

* * *

Both the original and the amended versions of the SORA . . . define the term "convicted" to reach youthful trainees charged with certain sex offenses. The SORA thus creates an exception to the HYTA's provisions that "assignment of an individual to the status of youthful trainee ... is not a conviction for a crime" and that an "individual assigned to the status of youthful trainee shall not suffer a civil disability or loss of right or privilege following his or her release from that status because of his or her assignment as a youthful trainee." . . . Notwithstanding the HYTA, the SORA thus requires youthful trainees charged with certain sex offenses to register as "convicted sex offenders" and information about their identities and "convictions" appears on the PSOR. [*Doe*, 490 F3d at 495-496 (internal citations omitted).]

---

[5] Some juvenile offenders and some "Tier I" offenders are exempted from the PSOR, see MCL 28.728(4); however, these exceptions are not at issue in this case.

In this case, defendant pleaded guilty to CSC-II involving a person under 13, MCL 750.520c, a Tier-III offense for purposes of the SORA. MCL 28.722(k); MCL 28.722(w)(*v*). Although defendant was assigned and completed youthful trainee status under the HYTA, because defendant's adjudication under the HYTA occurred before October 1, 2004, he is considered to have been "convicted" of a listed offense for purposes of the SORA and must register as a sex offender. MCL 762.14(3). As a Tier-III offender who does not qualify under any of the exceptions, defendant is required to register as a sex offender for life. MCL 28.723(1)(b); MCL 28.722(w)(*v*).

## B. CONSTITUTIONAL PRINCIPLES

"The Ex Post Facto Clauses of the United States and Michigan Constitutions bar the retroactive application of a law if the law: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) *increases the punishment for a crime*; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014), citing *Calder v Bull*, 3 US (3 Dall) 386; 390; 1 L Ed 648 (1798) (emphasis added). "The Michigan Constitution prohibits cruel *or* unusual punishment, Const. 1963, art. 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, U.S. Const. Am. VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). Thus, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*. (quotation omitted).

## IV. ANALYSIS

Defendant argues that we should affirm the trial court's order removing him from the sex offender registry because the SORA as applied to him constitutes cruel or unusual punishment and violates the Ex Post Facto Clause. Necessarily, determination of whether a law violates the Ex Post Facto Clause or amounts to cruel or unusual punishment involves a threshold inquiry into whether the law imposes punishment in the constitutional sense.

This Court has previously addressed whether the SORA imposes punishment as applied to adult defendants. In *People v Pennington*, 240 Mich App 188, 193; 610 NW2d 608 (2000), this Court rejected the defendant's argument that the SORA violated the Ex Post Facto Clause, holding that the SORA's registration requirement did not constitute punishment. This Court relied on *Lanni v Engler*, 994 F Supp 849 (ED Mich, 1998), and *Doe v Kelley*, 961 F Supp 1105 (WD Mich, 1997), two federal cases holding that the SORA did not constitute punishment and was instead aimed at protecting the public. *Pennington*, 240 Mich App at 193-197.

Similarly, in *People v Golba*, 273 Mich App 603; 729 NW2d 916 (2007), this Court rejected a constitutional challenge brought by an adult defendant. In *Golba*, the defendant argued that the trial court violated his constitutional rights by ordering him to register as a sex offender based on judicially found facts. *Id*. at 615. In rejecting the defendant's argument, this Court held that the SORA did not offend the constitution because it did not amount to punishment. *Id*. at 619-620. Instead, this Court explained that the act "advances a legitimate government interest in protecting the community by promoting awareness of the presence of convicted sex offenders from whom certain members of the community may face a danger." *Id*. (Quotation marks and citation omitted).

This Court has also addressed whether the SORA imposes punishment as applied to a juvenile. In *Ayres*, 239 Mich App at 9-10, the juvenile respondent was adjudicated delinquent in family court for CSC-II and was required to register as a sex offender. This Court rejected the respondent's argument that the SORA amounted to cruel or unusual punishment. *Id*. at 18-19, 21. In doing so, this Court held that the SORA was not a form of punishment, adopting the reasoning set forth in *Kelley*, 961 F Supp at 1105, and *Lanni*, 994 F Supp at 852. *Ayres*, 239 Mich App at 18-19. However, the *Ayres* Court "buttressed its conclusion" that the SORA did not constitute punishment "with the fact that SORA at that time exempted juveniles from the provisions requiring public notification." *Golba*, 273 Mich App at 618.

Following the creation of the PSOR, in rejecting various constitutional arguments brought by another juvenile respondent, this Court questioned the continuing validity of *Ayres*. *In re Wentworth*, 251 Mich App 560, 568-569; 651 NW2d 773 (2002). Seven years later in *Dipiazza*, 286 Mich App at 146-147, in a case involving an 18-year-old HYTA defendant, this Court held that *Ayres* was no longer binding and concluded that the SORA as applied to the defendant in that case, amounted to cruel or unusual punishment.

In *Dipiazza*, the defendant, than age 18, was involved in a consensual sexual relationship with NT, a female who was "nearly 15 years old." *Id*. at 140. NT's parents were aware of the relationship and condoned it, but one of NT's teachers reported the defendant to police. *Id*. The defendant was adjudicated under the HYTA for attempted CSC-III, and he successfully completed probation. *Id*. at 140, 154. Although his case was dismissed and he eventually married NT, the defendant was still required to register as a sex offender. *Id*. at 140.

The defendant petitioned the trial court for removal from the sex offender registry, arguing that the registry requirement amounted to cruel or unusual punishment. *Id*. at 140-141. Specifically, the defendant argued that he did not have a conviction on his record because he successfully completed HYTA and the registry wrongfully identified him as having been convicted of a sex offense. *Id*. The defendant argued that he would not have had to register on the PSOR if he had been convicted six weeks later due to amendments to the SORA that became effective on October 1, 2004. *Id*. at 141. The trial court denied the defendant's request, ruling that it was bound by *Ayres*, 239 Mich App at 8. *Dipiazza*, 286 Mich App at 141.

On appeal, in addressing whether the registration and notification requirements of the SORA imposed "punishment" on the defendant, this Court examined *Ayres*, and then noted that *Ayres* was decided under the SORA as first enacted, when public access to registration was foreclosed, and that the continuing validity of *Ayres* was questioned by this Court in *Wentworth*, 251 Mich App at 560. *Dipiazza*, 286 Mich App at 144-146. This Court proceeded to apply anew the four factors[6] set forth in *Ayres* for determining whether government action is punishment in the constitutional sense. *Id*. at 147-148.

---

[6] These factors include: (1) legislative intent, (2) design of the legislation, (3) historical treatment of analogous measures, and (4) effects of the legislation. *Dipiazza*, 286 Mich App at 147, citing *Ayres*, 239 Mich App at 14-15.

With respect to the first factor (legislative intent), this Court noted that the amendments to the SORA on October 1, 2004, were motivated in part by concerns that the "reporting requirements are needlessly capturing individuals who do not pose a danger to the public, and who do not pose a danger of reoffending," *id.* at 148 (quotation marks and citations omitted), and observed that:

> It is incongruous to find that a teen who engages in consensual sex and is assigned to youthful trainee status after October 1, 2004, is not considered dangerous enough to require registration, but that a teen who engaged in consensual sex and was assigned to youthful trainee status before October 1, 2004, is required to register. The implied purpose of SORA, public safety, is not served by requiring an otherwise law-abiding adult to forever be branded as a sex offender because of a juvenile transgression involving consensual sex during a Romeo and Juliet relationship. [*Dipiazza*, 286 Mich App at 149.]

With respect to the second factor (the design of the legislation), this Court noted that the federal decisions (*Lanni* and *Kelley*) concluded that the notification scheme in the SORA was "purely regulatory and remedial" and did not inflict "suffering, disability or restraint." *Id.* Yet, this Court went on to distinguish the federal decisions, finding that the defendant in the matter at hand did suffer a disability and loss of privileges:

> That defendant is suffering a disability and a loss of privilege is further confirmed by the fact that there are not strict limitations on public dissemination . . . . Searches on the sex offender registry are no longer limited . . . to the searcher's zip code, but rather the registry provides a searcher with information about every person registered as a sex offender living in every zip code in the state. [*Dipiazza*, 286 Mich App at 150-151 (citations omitted).]

With respect to the third factor (historical treatment of analogous measures), this Court found that none existed, and with respect to the fourth factor (the effects of the legislation), this Court held that the SORA negatively impacted the HYTA's purpose and the defendant who had successfully completed his probation:

> While the government has always had the authority to warn the public about dangerous persons and such warnings have never been understood as imposing punishment . . . in this case, the warning is not about the presence of an individual who is dangerous . . . . [T]he government is warning the public that defendant is dangerous, thus publicly labeling defendant as dangerous. Such warning or "branding" in the context of this case clearly constitutes punishment.

> Further, the basic premise of HYTA is "to give a break to first-time offenders who are likely to be successfully rehabilitated" by having the offender's act not result in a conviction of a crime and by requiring that the offender's record not be available for public inspection . . . . However, the PSOR provides a "Conviction Date" . . . for defendant . . . . Consequently, requiring defendant to register for 10 years forces him to retain the status of being "convicted" of an

-7-

offense, thus frustrating the basic premise of HYTA. [*Dipiazza*, 286 Mich App at 152 (citations omitted).]

This Court also set forth the "devastating" effects on the defendant caused by the requirement to register, and concluded that the registration requirements under the SORA, "as applied to defendant," constituted punishment. *Id*. at 152-153.

Next, this Court addressed whether the punishment imposed by the SORA was cruel or unusual as applied to the defendant, and concluded that, "considering the gravity of the offense, the harshness of the penalty, a comparison of the penalty to penalties imposed for the same offense in other states, and the goal of rehabilitation requiring defendant to register as a sex offender for 10 years is cruel or unusual punishment." *Id*. at 156.

Following this Court's decision in *Dipiazza*, the Legislature again amended the SORA and added a "consent exception" for certain offenders who can prove that they engaged in a consensual sexual act. 2011 PA 18. That exception is codified at MCL 28.728c(3) and (14), and provides as follows:

> (3) An individual classified as a tier I, tier II, or tier III offender who meets the requirements of subsection (14) . . . may petition the court under that subsection for an order allowing him or her to discontinue registration under this act.
>
> * * *
>
> (14) The court shall grant a petition properly filed by an individual under subsection (3) if the court determines that the conviction for the listed offense *was the result of a consensual sexual act between the petitioner and the victim* and any of the following apply:
>
> (a) All of the following:
>
> (i) The victim was 13 years of age or older but less than 16 years of age at the time of the offense.
>
> (ii) The petitioner is not more than 4 years older than the victim.
>
> (b) All of the following:
>
> (i) The individual was convicted of a violation of [MCL 750.158, MCL 750.338, MCL 750.338a, or MCL 750.338b.]
>
> (ii) The victim was 13 years of age or older but less than 16 years of age at the time of the violation.
>
> (iii) The individual is not more than 4 years older than the victim.
>
> (c) All of the following:

        (i) The individual was convicted of a violation of [MCL 750.158, 750.338, 750.338a, 750.338b, and 750.520c.[7]]

        (ii) The victim was 16 years of age or older at the time of the violation.

        (iii) The victim was not under the custodial authority of the individual at the time of the violation. [Emphasis added.]

In addition, in *In re TD*, 292 Mich App at 678, in a case involving a juvenile defendant convicted by jury of CSC-II, this Court rejected the defendant's argument that the SORA amounted to cruel or unusual punishment. This Court differentiated *Dipiazza*, noting "[t]he *Dipiazza* Court's analysis was limited to the specific facts in that case." *Id*. at 689. However, our Supreme Court vacated this Court's opinion and dismissed the case as moot because the defendant was "no longer required to register under the amended [SORA]." *In re TD*, 493 Mich at 873. *In re TD*, therefore, has no precedential value and the prosecution's reliance on the case is misplaced.

In this case, defendant was not a juvenile at the time he was assigned youthful trainee status under the HYTA. The HYTA applies to individuals between the ages of 17 and 21. Thus, assignment under the HYTA is not indicative of whether an individual is a juvenile under the law. However, *Pennington*, 240 Mich App at 188 and *Golba*, 273 Mich App at 603, are not controlling in this case because, unlike the defendants in *Pennington* and *Golba*, defendant was assigned youthful trainee status under the HYTA.

Defendant argues that *Dipiazza* is controlling. He contends that, like in *Dipiazza*, he engaged in a consensual act with the complainant and was adjudicated under the HYTA. Defendant argues that requiring him to register as a sex offender is punishment when he does not have a conviction for a sex offense.

*Dipiazza* is not controlling in this case. First, the facts of this case are distinguishable. Defendant was not involved in consensual relationship similar to the one at issue in *Dipiazza*, which involved an 18-year-old and a female who was "nearly" 15-years-old. In contrast, in this case, defendant was 19 when he committed the offense and the complainant was only 12 years old. This was not an ongoing "Romeo and Juliet" relationship condoned by the complainant's parents. Second, the *Dipiazza* Court analyzed whether the SORA constituted punishment *before* the Legislature amended the SORA in 2011 and added the "consent exception" discussed above. This exception addressed a primary concern the *Dipiazza* Court had with the SORA—i.e. requiring a youthful trainee to register as a sex offender after he engaged in a consensual sexual relationship with a peer. Because the *Dipiazza* Court did not have the opportunity to consider if the 2011 amendment had any impact on whether the SORA constitutes punishment, its constitutional analysis is outdated.

---

[7] For purposes of the SORA, defendant is considered to have been "convicted" of MCL 750.520c (CSC-II); because the complainant in this case was not age 16 at the time of the offense (she was age 12), the "consent exception" under MCL 28.728c(3) and (14)(c) does not apply to defendant.

To determine whether the SORA is a form of punishment as applied to defendant, we turn to *Earl*, 495 Mich at 33, our Supreme Court's most recent decision addressing whether a statutory scheme imposes punishment for purposes of the constitution.

In *Earl*, our Supreme Court explained that, determining whether a legislative scheme imposes punishment involves a two-part inquiry:

> The court must begin by determining whether the Legislature intended the statute as a criminal punishment or a civil remedy. . . . If the Legislature's intention was to impose a criminal punishment . . . the analysis is over. [] However, if the Legislature intended to enact a civil remedy, the court must also ascertain whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. . . . [*Earl*, 495 Mich at 38, (quotation marks and citations omitted).]

The first step in this inquiry—i.e. determining whether the Legislature "intended for a statutory scheme to impose a civil remedy or a criminal punishment"—requires examining the statute's text and its structure to determine whether the Legislature "indicated either expressly or impliedly a preference for one label or the other." *Id*. (quotation marks and citations omitted). "If the statute imposes a disability for the purposes of punishment that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal." *Id*. at 38-39 (quotation marks and citations omitted). In contrast, "a statute is intended as a civil remedy if it imposes a disability to further a legitimate governmental purpose." *Id*. "[W]here a legislative restriction 'is an incident of the State's power to protect the health and safety of its citizens,' it will be considered as 'evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Id*. at 42, quoting *Smith v Doe*, 538 US 84, 93-94; 123 S Ct 1140; 155 L Ed 2d 164 (2003) (quotation marks and citation omitted).

In the event that the Legislature did not intend for an act to impose punishment, the second part of the analysis is to determine whether the act is "so punitive either in purpose or effect as to negate the State's intent to deem it civil." *Id*. at 44, quoting *Smith*, 538 US at 92 (quotation marks and citations omitted). In determining whether "an act has the purpose or effect of being punitive, courts consider seven factors noted in *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963)." *Earl*, 495 Mich at 43-44. The *Mendoza-Martinez* factors include:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned. [*Earl*, 495 Mich at 44, quoting *Mendoza–Martinez*, 372 US at 168-169.]

These factors are "useful guideposts" and are neither "exhaustive nor dispositive." *Earl*, 495 Mich at 44 (quotation marks and citation omitted). Moreover, "courts will 'reject the

legislature's manifest intent [to impose a civil remedy] only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect to negate the . . . intention to deem it civil." *Id*. (quotation marks and citations omitted).

### (A) Legislative Intent

MCL 28.721a sets forth the Legislature's intent in enacting the SORA as follows:

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

This statutory provision indicates that the Legislature was acting pursuant to its police powers to protect the citizenry against individuals it deemed pose a danger of recidivism by providing police and the public with a means of monitoring those individuals. "[W]here a legislative restriction 'is an incident of the State's power to protect the health and safety of its citizens,' it will be considered as 'evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment.'" *Earl*, 495 Mich at 42, quoting *Smith* 538 US at 93-94. Here, the Legislature did not intend that the SORA impose punishment, instead, "[t]he Legislature's intent as set forth in express terms was not to chastise, deter, or discipline an offender, but rather to assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders." *Dipiazza*, 286 Mich App at 148 (quotation marks and citations omitted).

The *DiPiazza* Court reasoned that the Legislature's stated intent as expressed in MCL 28.721a was "frustrated" because "[t]he implied purpose of SORA, public safety, is not served by requiring an otherwise law-abiding adult to forever be branded as a sex offender because of a juvenile transgression involving consensual sex during a Romeo and Juliet relationship." *Id*. at 148-149. The 2011 amendment addressed the *DiPiazza* Court's concern. Specifically, the 2011 amendment added a "consent exception" to the SORA which provides some youthful offenders relief in situations involving consensual sexual acts. See MCL 28.728c(14). While the exception does not apply in this case because the complainant was only 12 years old and defendant was 19, the Legislature could have reasonably concluded that the public should be protected and informed of individuals, including HYTA trainees, who commit sexual offenses against persons under age 13, irrespective of whether the complainant consented. Failure to extend the consent exception to include situations involving complainants under the age of 13 does not make the SORA punitive in nature.

-11-

In sum, we conclude that the Legislature intended the SORA as a civil remedy to protect the health and welfare of the public.

## B. Purpose and Effects

Having determined that the Legislature intended the SORA as a civil remedy, we must determine whether the SORA nevertheless "'is so punitive either in purpose or effect as to negate the State's intent to deem it civil.'" *Earl*, 495 Mich at 44, quoting *Smith*, 538 US at 92 (citations and quotation marks omitted). This inquiry involves applying the relevant *Mendoza-Martinez* factors. In *Smith*, 538 US at 97, the Supreme Court applied these factors to Alaska's Sex Offender Registration Act (ASORA) and concluded that the purpose and effects of the ASORA did not negate the state's intent to deem it civil. The *Smith* Court applied the following five factors in reaching this conclusion: (1) whether, "in its necessary operation, the regulatory scheme has been regarded in our history and traditions as punishment," (2) whether the SORA "imposes an affirmative disability or restraint," (3) whether the SORA "promotes the traditional aims of punishment," (4) whether the SORA "has a rational connection to a nonpunitive purpose," and (5) whether the SORA "is excessive with respect to this purpose." *Id*. These five factors are relevant in this case and they govern our analysis.

### (1) Historical Form of Punishment

With respect to whether the SORA has been regarded historically and traditionally as punishment, sex offender registration and notification laws are a relatively new form of legislation. See *Kelley*, 961 F Supp at 1106-1107. Today, all 50 states and the federal government have enacted some form of sex offender registration and notification provisions, see *id*., and a body of law has developed on a range of issues related to the legislation including whether the legislation constitutes punishment.

*Smith*, 538 US at 93, is the preeminent case holding that a sex offender registration and notification law, as applied to an adult defendant, is not a form of punishment. The *Smith* Court noted that "an imposition of restrictive measures on sex offenders adjudged to be dangerous is a legitimate nonpunitive governmental objective and has been historically so regarded." *Id*. (quotation marks and citation omitted); see also *Helman v State*, 784 A2d 1058, 1077 (Del, 2001) (noting that, "in their brief history most courts seem to regard notification statutes as remedial in nature"). Indeed, consistent with *Smith*, courts from various jurisdictions have held that, as applied to adult defendants, sex offender registration and notification laws are non-punitive in nature. See e.g. *Cutshall v Sundquist*, 193 F3d 466, 477 (CA 6, 1999); *Femedeer v Haun*, 227 F3d 1244, 1253 (CA 10, 2000); *People v Malchow*, 193 Ill 2d 413, 421; 250 Ill Dec 670; 739 NE2d 433 (2000); *State v Seering*, 701 NW2d 655, 667-669 (Iowa, 2005); *State v Pentland*, 296 Conn 305, 314; 994 A2d 147 (2010) (concluding that states' sex offender legislation did not impose punishment in the constitutional sense); but see *Commonwealth v Baker*, 295 SW3d 437, 447 (Ky, 2009); *Wallace v State*, 905 NE2d 371, 384 (Ind, 2009); *Starkey v Oklahoma Dep't of Corr*, 2013 OK 43; 305 P3d 1004, 1030 (2013) (concluding that respective states' sex offender registry and notification laws imposed punishment).

In addition, unlike traditional forms of public shaming, such as branding and banishment, publicity and stigma are not integral parts of the SORA; instead, "[t]he purpose and the principal

effect of notification are to inform the public for its own safety, not to humiliate the offender . . . attendant humiliation is but a collateral consequence of a valid regulation." *Smith*, 538 US at 99. As this Court previously noted in *Ayres*:

> The notification provisions themselves do not touch the offender at all. While branding, shaming and banishment certainly impose punishment, providing public access to public information does not . . . [a]nd while public notification may ultimately result in opprobrium and ostracism similar to those caused by these historical sanctions, such effects are clearly not so inevitable as to be deemed to have been imposed by the law itself. [*Ayres*, 239 Mich App at 16, quoting *Kelley*, 961 F Supp at 1110.]

Here, although defendant was adjudicated under the HYTA, the HYTA does not provide that defendant's adjudication would be sealed from the public. Instead, the HYTA provides that an individual adjudicated as a youthful trainee "shall not suffer a civil disability or loss of right or privilege" "*except*" for youthful trainees who were adjudicated before October 1, 2004, for a listed offense under the SORA. MCL 762.14(2) (3) (emphasis added). Thus, the SORA makes public information that was not confidential under the HYTA.

In considering the "historical treatment of analogous measures," the *Dipiazza* Court concluded that "no analogous measures exists, nor is there an historical antecedent that relates to requiring a defendant to register as a sex offender when the defendant was a teenager engaged in consensual sex and . . . was assigned to youthful trainee status. . . ." *Dipiazza*, 286 Mich App at 151. The *Dipiazza* Court considered the historical treatment of the SORA in the context of the unique facts of that case, thus the reasoning is inapplicable in this case. Furthermore, given that the 2011 amendment added a consent exception, this reasoning is no longer applicable.

In short, we conclude that the SORA is unlike traditional forms of punishment and the first *Mendoza-Martinez* factor weighs in favor of finding that the SORA is non-punitive in its purpose and effects as applied to defendant.

*(2) Affirmative Disability or Restraint:*

The second relevant factor concerns whether the SORA imposes an affirmative disability or restraint. *Smith*, 538 US at 97. The *Smith* Court noted that, in applying this factor, "we inquire how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Id*. at 99-100. The Court concluded that the Alaska Sex Offender Registration Act (ASORA) did not impose an affirmative disability or restraint. *Id*. at 100. The ASORA did not resemble imprisonment because it did not impose physical restraints, it did not limit the offender's ability to change jobs or residences, and the effects were less harsh than occupational debarment, which the Court previously found to be non-punitive. *Id*. at 100. The Court rejected the argument that the ASORA imposed a severe restraint in that it likely would render offenders "completely unemployable," explaining that, even absent the ASORA, employers and landlords could obtain the same information by conducting "routine background checks." *Id*. The Court stated: "[a]lthough the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions,

but from the fact of conviction, already a matter of public record." *Id*. at 101. Moreover, unlike probation or supervised release, which "entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction," under the ASORA, offenders were "free to move where they wish and to live and work as other citizens, with no supervision," and any infraction required a prosecution separate from the original offense. *Id*. at 101-102.

Defendant argues that the SORA has imposed significant hardships on him and his family including "loss of employment, loss of ability to be a father to his children, harassment, and depression." Apart from the SORA, defendant argues that a criminal background check would not reveal any conviction for a sexual offense.

In addition, the SORA "inflicts no suffering, disability or restraint." *Pennington*, 240 Mich App at 195, quoting *Kelley*, 961 F Supp at 1108-1109. Although defendant certainly experiences adverse impacts from being listed on the PSOR, these impacts stem from the commission of the underlying act, not the SORA's registration requirements. While secondary effects may flow indirectly from the PSOR, "'punishment in the criminal justice context must be reviewed as the *deliberate imposition by the state* of some measure *intended* to chastise, deter or discipline. Actions taken by members of the public, lawful or not, can hardly be deemed dispositive of whether legislation's purpose is punishment.'" *Pennington*, 240 Mich App at 196, quoting *Kelley*, 961 F Supp at 1111. The central purpose of the SORA is not intended to chastise, deter or discipline; rather, it is a remedial measure meant to protect the health, safety and welfare of the general public.

The *Dipiazza* Court found that the defendant in that case did suffer a disability and loss of privilege in part because the SORA no longer contained "strict limitations on public dissemination as there were in *Lanni*." *Dipiazza*, 286 Mich App at 151. However, the 2011 amendment narrowed the scope of the SORA by allowing certain individuals to petition the court for removal from the registry because they engaged in a consensual sexual act. While the Legislature did not extend the exemption to individuals who commit sexual offenses against children under the age of 13, this does not serve to transform the SORA into punishment. Rather, this furthers the SORA's purpose of protecting the public. In short, *Dipiazza's* reasoning with respect to this factor is inapplicable in the present case and we conclude that the second *Mendoza-Martinez* factor weighs in favor of finding that the SORA does not impose punishment as applied to defendant.

*(3) Traditional Aims of Punishment*

The third relevant factor also fails to indicate a punitive purpose where the SORA does not promote the traditional aims of punishment, such as retribution and deterrence. See *Earl*, 495 Mich at 46; *Smith*, 538 US at 97. The *Smith* Court reasoned that although the ASORA may have served to deter future crime, this alone was not indicative of punishment where "[a]ny number of governmental programs might deter crime without imposing punishment." *Smith*, 538 US at 102. The Court noted, "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Id*. (quotation marks and citations omitted). And, although the length of the reporting requirement was tied to categories of offenders, the registration obligations were

not retributive, but instead were "reasonably related to the danger of recidivism," which was "consistent with the regulatory objective." *Id.*

*Smith's* reasoning is persuasive and applies in this case. While the SORA may deter future sexual offenses, that is not the primary purpose of the act and it does not render the SORA punitive. Further, while the SORA exempts certain individuals from the registry requirements in situations involving a consensual act, and categorizes offenders into tiers depending on the severity of the underlying offense, like in *Smith*, these mechanisms are "reasonably related to the danger of recidivism," which is "consistent with the regulatory objective." *Id.*

### (4) Rational Connection to Non-Punitive Purpose

The SORA has a rational connection to a non-punitive purpose, and therefore the fourth relevant factor weighs in favor of finding that the act does not impose punishment. *Smith*, 538 US at 97. The *Smith* Court noted that the ASORA "has a legitimate nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community." *Id.* at 103 (quotation marks and citation omitted). The SORA has the same legitimate non-punitive purpose of public safety. See *Doe*, 490 F3d at 505 (noting that "this Court has previously concluded that the state's interests in protecting public safety and in aiding effective law enforcement are advanced by the SORA's registration requirements.")

### (5) Excessive With Respect to Non-Punitive Purpose

The fifth and final relevant factor for purposes of our analysis concerns whether the SORA is excessive with respect to its non-punitive purpose of protecting the safety and welfare of the general public. *Smith*, 538 US at 97. In weighing this factor, the *Smith* Court reasoned that neither the duration nor the broad dissemination of information to the public was excessive. *Id.* at 104-105. Alaska's public notification scheme was passive and required individuals to search for information, and the website warned users they would be prosecuted for committing criminal acts against offenders. *Id.* at 105. The Court stated, "[g]iven the general mobility of our population, for Alaska to make its registry system available and easily accessible throughout the State was not so excessive a regulatory requirement as to become a punishment." *Id.*

We find *Smith's* analysis regarding this factor persuasive and equally applicable in the context of Michigan's SORA as applied to defendant. The PSOR is passive and requires individuals to seek-out information on sex offenders. The registry warns members of the public not to use information from the PSOR to "injure, harass, or commit a crime against" individuals listed on the registry and warns that such acts could lead to prosecution.[8] Moreover, the duration of the registry requirements are reasonably tied to the legitimate regulatory purpose of protecting the public. The SORA categorizes offenders into tiers with the more serious offenses requiring lifetime registration. Furthermore, the SORA contains exceptions for certain offenders who

---

[8]    See    Michigan's    Public    Sex    Offender    Registry    at <www.communitynotification.com/cap_main.php?office=55242/> (last accessed August 1, 2014).

engaged in a consensual sexual act, limiting the impact of the registry to those individuals that the Legislature deemed posed a greater threat to the public.

Although the HYTA requires certain individuals to register under the SORA based on what, at first blush, appears to be an arbitrary date of adjudication (October 2004), there was a rational basis underlying this provision. Notably, when the Legislature amended the HYTA to require youthful trainees adjudicated before October 2004 to comply with the SORA and exempted youthful trainees adjudicated after that date, the Legislature also amended the HYTA to provide that, beginning in 2004, individuals who pleaded guilty to more serious sexual offenses (including CSC-I and CSC-II) were no longer eligible for youthful trainee status under the HYTA. See 2004 PA 239 (amending Sections 11 and 14 of the HYTA). Therefore, the class of youthful trainees adjudicated under the HYTA before October 2004 includes individuals who pleaded guilty to more serious sexual offenses whereas the class of youthful trainees adjudicated after October 2004 did not. Thus, it was reasonable for the Legislature to require the pre-October 2004 class of HYTA youthful trainees to comply with the SORA—i.e. it could have concluded that this class contained individuals who were more likely to reoffend and posed a greater threat to the public. This statutory scheme is not overly-excessive and instead "[t]he 2004 amendments continue to advance public safety goals while simultaneously 'weeding out' those youthful trainees who have been deemed least likely to reoffend." *Doe*, 490 F3d at 505.

The *Dipiazza* Court found that the effects of the SORA were "devastating" to the defendant in that case. However, unlike in *Dipiazza*, this case involves different circumstances. Here, defendant was not engaged in a consensual relationship with the 12-year-old complainant. Thus, the adverse effects that flow from the SORA in this case are not "overly excessive" as compared to its regulatory purpose and this factor weighs in favor of finding that the SORA is non-punitive as applied to defendant.

V. CONCLUSION

In sum, the relevant *Mendoza-Martinez* factors indicate that the SORA does not impose punishment as applied to defendant. The SORA has not been regarded in our history and traditions as punishment, the SORA does not impose affirmative disabilities or restraints, it does not promote the traditional aims of punishment, and the SORA has a "rational connection to a nonpunitive purpose" and is not excessive with respect to this purpose. Defendant therefore has failed to show "by the clearest proof" that the SORA is "so punitive either in purpose or effect" that it negates the Legislature's intent to deem it civil. *Earl*, 495 Mich at 44. Accordingly, as applied to defendant, the SORA does not violate the Ex Post Facto Clause or amount to cruel or unusual punishment because it does not impose punishment.

Reversed. Jurisdiction is not retained.

/s/ Stephen L. Borrello
/s/ William C. Whitbeck
/s/ Kirsten Frank Kelly

-16-