# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MICAH MELCHIZEDEK DANIEL, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellant,

and

ATTORNEY GENERAL,

        Amicus Curiae,

v

MICAH MELCHIZEDEK DANIEL,

        Respondent-Appellee.

UNPUBLISHED
September 12, 2017

No. 334057
Washtenaw Circuit Court
Family Division
LC No. 15-000375-DL

---

Before: HOEKSTRA, P.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

Petitioner appeals by right a dispositional order, which exempted respondent from registering as a sex offender under the Sex Offenders Registry Act (SORA), MCL 28.721 *et seq*. We reverse.

## I. BASIC FACTS

The 15-year-old complainant was a resident at the Washtenaw County Detention Facility. She performed oral sex on 16-year-old T.B., who was also a resident at the facility. In a forensic interview, complainant indicated that while she was performing oral sex on T.B., respondent groped her buttocks from behind. Respondent also forced complainant's head down on T.B.'s ejaculating penis. The interviewer asked for clarification on a few points and included the following in her forensic interview report:

> [Complainant] clarified that [respondent] was the one who pushed her head down when [T.B.] was almost done. She said she saw him move his hand and then he started laughing so hard, he had to leave the room. [Complainant] said

-1-

[respondent] was also grabbing her butt when she was giving [T.B.] head. She said she told him to stop and pushed his hand away, but he kept doing it.

\*\*\*

I told [complainant] that she had told me part was consensual and part was not. I asked what part was not consensual. She said the part with [respondent] grabbing her butt and pushing down her head. She said everything with [T.B.] was consensual. I asked what [T.B.] said when [respondent] pushed her head. [Complainant] said she thinks he laughed, but that was because she got it on her face.

The interviewer asked complainant what she wanted to "see happen" with the investigation. Complainant said "she didn't want any charges to be pressed. She is not mad about what happened with [T.B.], but she is mad about [respondent] shoving her head down."

Following the investigation, respondent pleaded responsible to third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with a person 13 years of age and under 16 years) for aiding and abetting oral sex, and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (sexual contact through force or coercion), for touching the complainant. Respondent's CSC-III charge was a "Tier III offense," for which registration as a sex offender was required under MCL 28.723. Respondent was required to register as a sex offender unless "the court determines that the victim consented to the conduct constituting the violation, that the victim was at least 13 years of age but less than 16 years of age at the time of the offense, and that the individual is not more than 4 years older than the victim." MCL 28.722(w)(*iv*).

Respondent asked to be exempted from the SORA registration requirement. Petitioner filed a response, noting that the victim had *not* consented to respondent's conduct, noting that complainant specifically reported that respondent's acts of groping her buttocks and forcefully pushing her head down on to T.B.'s penis were non-consensual.

At a hearing on the issue, respondent acknowledged that there was no legal or factual basis for his position. Still, the lower court concluded:

[W]hen statutes are written I think you can necessarily not anticipate every scenario there is going to be and . . . I imagine this is one of the scenarios everyone wouldn't – no one would have put . . . in the forefront of their mind when writing the statute. I think that it's clear from the statement . . . from the Complainant that the sexual act on the co-Respondent was consensual. [Respondent] then put his hand on her head, she said that touching was not consensual . . . but I am convinced with the fact that she consented to the sexual act which is what the purpose of the Sex Offender Registry is . . . that I am finding . . . that she consented to the conduct and that [respondent] is not required to register.

Um – I don't think this is the kind of conduct they intended to have register and the fact that they put in the exception – the so-called Romeo and

-2-

Juliet exception . . . – that it is much more conduct that falls under that exception to the Registry than it is . . . the other. So I am not going to require that he register.

***

So it is a dispositional order . . .and all it's gonna say is plea accepted, . . . the Court finds that the complainant consented to the conduct . . .

The lower court entered a final order of disposition and closed the case. Petitioner appeals as of right.

## II. WHETHER RESPONDENT'S CONDUCT EXEMPTED HIM FROM REGISTERING

The prosecution argues that the lower court erred in exempting respondent from registering as a sex offender where respondent's actions could not be considered consensual. We agree. "The construction and application of SORA . . . presents a question of law that is reviewed de novo on appeal." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009). "Additionally, this Court reviews the underlying factual findings of the trial court at sentencing for clear error." *Id.* (quotation marks omitted). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.*, quoting *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993).

Where a juvenile aids or abets in the commission of an offense, he may be convicted and punished as if he directly committed the offense, see MCL 767.39, and "[t]he prosecution needs only to prove that the underlying crime was committed by someone and that the respondent either committed or aided and abetted in the commission of that crime." *In re McDaniel*, 186 Mich App 696, 699–700; 465 NW2d 51 (1991). Pursuant to MCL 750.520d(1)(a), "[a] person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist . . . That other person is at least 13 years of age and under 16 years of age." There is no question that when T.B. engaged in oral sex with complainant, complainant was 15 years old. Respondent does not dispute that he was properly adjudicated for aiding and abetting T.B. in committing the offense. Under normal circumstances, the Tier III offense would require respondent to register as a sex offender. However, there is an exception to the registration requirement if "the court determines that the victim consented to the conduct constituting the violation, that the victim was at least 13 years of age but less than 16 years of age at the time of the offense, and that the individual is not more than 4 years older than the victim." MCL 28.722(w)(*iv*). At issue is whether complainant consented to the conduct.

Respondent asked to be exempted from the SORA registration requirement. Petitioner filed a response, noting that the victim had *not* consented to the conduct, relying upon the forensic interview summary in which complainant specifically reported that respondent's acts of groping her buttocks and forcefully pushing her head down on T.B.'s penis were non-consensual. At the hearing, respondent's attorney specifically admitted:

I have received the Petitioner's brief . . .regarding this issue. Um – we don't have a formal response to that, in fact we would concede that the law and the facts

of this case are . . . accurately stated in that brief. . . . I have looked into and researched this issue extensively regarding – and this is kind of a strange case where you have the principal actor who there was consent for then you have an aider and abettor who there was not consent . . .with and . . . whether or not the aiding and abetting individual takes on the state of mind of the principal. . . .[I] did not find anything in that light and certainly the language of the statute which refers to the conduct which . . . encompasses the violation of the statute has to be consensual, . . . we don't intend to put on any proof today to refute the complaining witnesses [sic] statement on that issue.

[T]his is a very unfortunate result. . . .[Respondent] is going to have to undergo in terms of registration . . . but we don't have a legal or factual argument that his particular conduct was consensual in this instance. It creates a situation where his consequences are much greater than his co-[respondent] . . .but . . . such is the law as I understand it.

In spite of defense counsel's acknowledgement that there was neither legal nor factual support for his position, the lower court concluded "that the sexual act on the co-Respondent was consensual" and "the fact that she consented to the sexual act which is what the purpose of the Sex Offender Registry" exempted respondent from having to register. But clearly respondent did not meet his burden of proving an exemption, as was his obligation under MCL 28.723a(1). The lower court concluded that SORA had not contemplated the situation before it and impermissibly relieved respondent of this burden.

In addition to relieving respondent of his burden of proof, the lower court erroneously made the sweeping conclusion that complainant consented to the acts for which respondent was adjudicated responsible. Because MCL 28.723a(5) prohibited compelling complainant to testify at the hearing, we are left with only her forensic interview. Complainant repeatedly indicated that certain of her acts with T.B. were consensual. However, she clearly did not consent to having respondent force her head down on T.B.'s ejaculating penis. Complainant was free to withdraw consent and stop performing oral sex. Respondent's behavior inhibited complainant from potentially withdrawing previously bestowed consent. See M Crim JI 20.27. The lower court erred in concluding that respondent was exempted from registering as a sex offender.

## III. WHETHER REGISTRATION IS CRUEL OR UNUSUAL PUNISHMENT

Respondent argues that, in the event this Court concludes that he is required to register as a sex offender, such registration is unconstitutional for juveniles and as applied to respondent in that it violates both the Eighth Amendment of the U.S. Constitution, US Const Amend VIII, and Michigan's constitution, Const Art 1, § 16, because it is punitive. We disagree. "Whether a statutory scheme is civil or criminal is . . .a question of statutory construction . . .The interpretation of a statute is a question of law that this Court reviews de novo." *People v Earl*, 495 Mich 33, 35-36; 845 NW2d 721 (2014).

Respondent appears to concede that the legislation at issue is civil in nature; instead, he argues that it has a punitive effect. The United States Supreme Court provided the framework for determining whether a law is punitive in *Smith v Doe*, 538 US 84; 123 S Ct 1140; 155 L Ed

2d 164 (2003), which our Michigan Supreme Court adopted in *People v Earl*, 495 Mich 33; 845 NW2d 721 (2014). In *Earl*, the Court set forth a number of factors to determine whether a law was so punitive in purpose so as to negate the state's intent that the law be deemed civil. The factors are:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned. [*Id*. at 44, quoting *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963).]

Both *Smith* and *Earl* set forth the relative framework for determining whether a law is punitive in nature, at least in the context of whether a law violates the ex post facto clause. But our Michigan Courts have also specifically addressed the issue of whether SORA constitutes punishment and have repeatedly concluded that it does not. See *In re Ayres*, 239 Mich App 8; 608 NW2d 132 (1999), *People v Pennington*, 240 Mich App 188; 610 NW2d 608 (2000), *People v Golba*, 273 Mich App 603; 729 NW2d 916 (2007).

*People v Dipiazza*, 286 Mich App 137; 778 NW2d 264 (2009) provides an exception. In *Dipiazza*, the 18-year-old defendant had a consensual Romeo-and-Juliet relationship with a girl who was 15 years old. The girl's parents knew of the relationship and the two subsequently married. Nevertheless, the defendant was adjudicated under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq*. and ordered to register as a sex offender. *Id*. at 140. SORA was subsequently amended to exclude youthful trainee status as "convicted" if the assignment occurred after October 1, 2004. But because the defendant was assigned youthful trainee status prior to that date, he was still considered "convicted" and his motion to remove himself from the registry was denied. *Id*. at 143. The *Dipiazza* Court concluded "that the registration requirement under SORA, as applied to defendant, constitutes punishment" based on the defendant's convincing argument that he was unable to find work because, although he could honestly tell employers that he had no conviction, the registry was available. *Id*. at 153-154. Having concluded that registration was punishment as applied to the defendant, the *Dipiazza* Court then concluded that it was cruel or unusual punishment. The Court found that the "circumstances of the offense are not very grave" whereas the penalty of registration was harsh. "Defendant is required to register as a sex offender along with rapists and pedophiles." *Id*. at 155. The Court concluded that "[b]ecause defendant's registration is not tied to a finding that the safety of the public is threatened, the registration requirement, as applied to defendant, is excessive." *Id*. at 156. The Court concluded:

> it is abundantly clear that there is no goal of rehabilitation in this case. Defendant never posed a danger to the public or a danger of reoffending. Defendant is not a sexual predator, nor did the trial court deem him to be. Further, even if defendant needed rehabilitation, SORA's labeling him as a convicted sex offender works at

an opposite purpose, preventing defendant from securing employment and otherwise moving forward with his life plans.

Consequently, after considering the gravity of the offense, the harshness of the penalty, a comparison of the penalty to penalties imposed for the same offense in other states, and the goal of rehabilitation, we conclude that requiring defendant to register as a sex offender for 10 years is cruel or unusual punishment. [*Id.* at 156.]

However, following the *Dipiazza* case, the legislature again amended the SORA to provide for a consent exception. This Court has recently analyzed the amended SORA using the two-part analytical process set forth in *Smith* and *Earl*, and has again concluded that the SORA was not intended as a punishment and that the SORA does not constitute punishment as generally applied.

In *People v Temelkoski*, 307 Mich App 241; 859 NW2d 743 (2014), the defendant committed his offense in 1994 when he was 19 years old and the victim was 12 years old. He pleaded guilty to CSC-II and was adjudicated under HYTA, successfully completing his three years of probation. Nevertheless, the defendant was required to register as a sex offender for life when the amended SORA went into place, requiring those convicted prior to October 2004 to register. Citing *Dipiazza*, the defendant asked that he be removed from the registry. The trial court granted the motion. *Temelkoski*, 307 Mich App at 244-245. On appeal, the defendant argued that the trial court's decision was correct because the SORA, as applied to him, constituted cruel or unusual punishment and violated the Ex Post Facto Clause. *Id.* at 250. Once again, such an argument involved the threshold inquiry as to whether the SORA imposed punishment. *Id.* at 251.

The *Temelkoski* Court first noted that *Dipiazza* was not controlling:

First, the facts of this case are distinguishable. Defendant was not involved in a consensual relationship similar to the one at issue in *Dipiazza*, which involved an 18–year–old and a female who was "nearly" 15–years–old. In contrast, in this case, defendant was 19 when he committed the offense and the complainant was only 12 years old. This was not an ongoing Romeo and Juliet relationship condoned by the complainant's parents. Second, the *Dipiazza* Court analyzed whether SORA constituted punishment before the Legislature amended the act in 2011 and added the consent exception discussed above. This exception addressed a primary concern the *Dipiazza* Court had with SORA—i.e., requiring a youthful trainee to register as a sex offender after he engaged in a consensual sexual relationship with a peer. Because the *Dipiazza* Court did not have the opportunity to consider if the 2011 amendment had any effect on whether SORA constitutes punishment, its constitutional analysis is outdated. [*Id.* at 257-258 (citation omitted).]

Therefore, in order to determine whether the SORA constituted punishment, the *Temelkoski* Court considered *Earl*. *Id.* at 258. The Court first considered the legislative intent behind the SORA by consulting the language of the statutory scheme and again concluded that "the

Legislature was acting pursuant to its police powers to protect the citizenry against individuals it deemed pose a danger of recidivism by providing police and the public with a means of monitoring those individuals" not to "chastise, deter, or discipline the offender." *Id.* at 260-261. To the extent the *Dipiazza* Court concluded that the expressed intent was frustrated by branding as sex offenders those who were involved in mere juvenile transgressions, the Court in *Temelkoski* confirmed that the newly enacted consent exception disposed of the concern. *Id.* at 261.

Having concluded that the legislature intended the SORA as a civil remedy to protect the health and welfare of the public, the *Temelkoski* Court then had to address whether the purpose and effects of the law were nevertheless so punitive so as to negate the state's intention to deem it civil. *Id.* at 262. In so doing, the Court looked to *Earl* and considered: (1) historical form of punishment; (2) affirmative disability or restraint; (3) traditional aims of punishment; (4) rational connection to non-punitive purpose; (5) excessiveness with respect to non-punitive purpose.

The *Temelkoski* Court acknowledged that sex offender registries were a relatively new phenomenon that each of the states had now adopted and was unlike traditional forms of punishment, having a non-punitive purpose. The Court found that the reasoning in *Dipiazza* was no longer applicable because the case was decided on its unique facts. *Id.* at 262-264. Additionally, although the defendant argued that the SORA imposed significant hardships, the Court noted that the 2011 amendment allowed certain individuals to petition the court for removal based on their individual circumstances and that there was, therefore, no affirmative disability or restraint. *Id.* at 266-267. Nor did the SORA provide traditional aims of punishment:

> *Smith's* reasoning is persuasive and applies in this case. While SORA might deter future sexual offenses, that is not the primary purpose of the act and it does not render SORA punitive. Further, while SORA exempts certain individuals from the registry requirements in situations involving a consensual act and categorizes offenders into tiers depending on the severity of the underlying offense, as in Smith these mechanisms are "reasonably related to the danger of recidivism," which is "consistent with the regulatory objective." *Id.* [*Temelkoski*, 307 Mich App at 267.]

The Court noted that there was no question that there was a rational connection to the non-punitive purpose of public safety. *Id.* at 267-268. Finally, the Court concluded that the SORA was not excessive with respect to its non-punitive purpose. The registry was "passive" in that it required the public to seek out the information. The registry also warns that using the information to harass individuals could lead to prosecution. The SORA categorized offenders such that more serious offenses required lifetime monitoring. Again, the SORA now contained an exception for consensual behavior under certain circumstances and the defendant did not meet that exception. *Id.* at 268-270. The Court ultimately concluded:

> In sum, the relevant *Mendoza–Martinez* factors indicate that SORA does not impose punishment as applied to defendant. SORA has not been regarded in our history and traditions as punishment, it does not impose affirmative disabilities or restraints, it does not promote the traditional aims of punishment,

and it has a rational connection to a nonpunitive purpose and is not excessive with respect to this purpose. Defendant therefore has failed to show by "the clearest proof" that SORA is "so punitive either in purpose or effect" that it negates the Legislature's intent to deem it civil. *Earl*, 495 Mich. at 44, 845 NW2d 721 (quotation marks and citation omitted). Accordingly, as applied to defendant, SORA does not violate the Ex Post Facto Clause or amount to cruel or unusual punishment because it does not impose punishment. [*Temelkoski*, 307 Mich App at 270-271.][1]

In *People v Tucker*, 312 Mich App 645; 879 NW2d 906 (2015), the defendant specifically challenged provisions of the SORA regarding school safety zones and in-person reporting requirements. *Id.* at 667. The defendant conceded that the SORA was meant as a civil law but that its purpose or effect was punitive. The *Tucker* Court agreed with some of the defendant's arguments but ultimately concluded that neither provision was unconstitutional. Regarding school safety zones, this Court ruled:

[T]he *Mendoza–Martinez* factors point us in both directions when it comes to student safety zones. We conclude that student safety zones impose affirmative restraints, resemble historical punishments, and promote deterrence. However, we also conclude that they are rationally connected to the nonpunitive purpose of public safety and that they are not excessive, because the Legislature is permitted to make the categorical judgment that sex offenders should not live, work, or loiter near schools. Weighing these factors, we are mindful that the burden lies with defendant to establish that student safety zones are punitive. As stated, a party asserting that a statutory scheme imposes punishment must provide "the clearest proof" that the scheme " 'is so punitive either in purpose or effect [as] to negate the ... intention to deem it civil.' " *Earl*, 495 Mich at 44, 845 NW2d 721, quoting Hendricks, 521 US at 361, 117 S Ct 2072 (quotation marks and citations omitted). In this case, because the *Mendoza–Martinez* factors cut both ways, we cannot conclude that defendant has met his burden. Further, even some of the factors that weigh in defendant's favor only do so to a limited extent. Student safety zones plainly restrict where offenders can live and work, but the restrictions are not absolute, and therefore, the restrictions are distinguishable from true banishment. And although student safety zones specifically deter registered offenders, the Smith Court held that a deterrent purpose alone will not render a civil regulatory scheme punitive. *Smith*, 538 US at 102, 123 S Ct 1140. Moreover, the nonpunitive purpose of the student safety zones is "a most significant factor" in determining whether they are punitive in effect. See *id.* (quotation marks and citation omitted). Given these considerations, there is not the clearest proof that the student safety zone restrictions are so punitive in

---

[1] *Temelkoski* is now in the Michigan Supreme Court. Oral arguments were heard in December 2016 and the Court subsequently ordered additional oral arguments for October 2017.

purpose or effect as to negate the Legislature's intent to deem them civil. [*Tucker*, 312 Mich App at 681-682.]

And as for in-person reporting requirements, this Court ruled:

Regarding the in-person reporting requirements, the *Mendoza–Martinez* factors do not readily lead to one conclusion over the other. The requirements impose affirmative restraints and arguably resemble conditions of supervised probation or parole. However, the reporting requirements do not necessarily promote deterrence or retribution, they are rationally connected to the nonpunitive purpose of protecting the public by ensuring that the registry is accurate, and they are not excessive. As with the student safety zones, we cannot find the clearest proof that the in-person reporting requirements are punitive in effect given that the *Mendoza–Martinez* factors cut both ways. Further, we again find that even some of the factors that weigh in defendant's favor only do so to a limited extent. Although the reporting requirements are undeniably burdensome, their restraining effect is not absolute. Registrants are not precluded from many activities, such as changing residences or jobs, but are merely required to report them. And many of the considerations that Smith used to distinguish sex offender registration from supervised probation or parole still apply to the in-person reporting requirements. Given these considerations, we conclude that there is not the clearest proof that the in-person reporting requirements are so punitive in purpose or effect as to negate the Legislature's intent to deem them civil. [*Id*. at 682-683.][2]

Given this Court's clear and generally unwavering opinion that the SORA is constitutional, only the Michigan Supreme Court will change that position. We decline respondent's request to declare SORA unconstitutional as applied to him.

## IV. WHETHER RESPONDENT SHOULD BE AFFORDED AN OPPORTUNITY TO WITHDRAW HIS PLEA

If this Court determines that respondent is required to register as a sex offender, then respondent requests the "remedy" of an opportunity to withdraw his plea because he was originally advised that he would have to report for 25 years when, in fact, registration was for a lifetime. We disagree.

Defense counsel comes close to misrepresenting the record. At the July 15, 2016 hearing, respondent's attorney specifically noted that, even if respondent was required to register as a sex offender, respondent had no interest in withdrawing his plea:

---

[2]     *Tucker*, like *Temelkoski*, is in Michigan Supreme Court. On September 27, 2016, the Court ordered that the application for appeal in *Tucker* be held in abeyance until the Court's resolution in *Temelkoski*.

-9-

I did pull the plea hearing from . . .the actual taking of the plea and would note that . . . [respondent] did not make any admissions regarding the CSC third in terms of whether or not there was consent or not and I would also note for the record that [respondent] was affirmatively advised that this was a 25 year Sex Offender Registry. I think the Court was about to say lifetime then . . . asked the Prosecutor who then said it was a 25 year registry rather than a lifetime. We now understand that it is . . .

It is life. Ah – I don't have any precedent that would allow . . . [respondent] to withdraw his plea on that basis. . . . [M]ost of the case law just says they need to be advised that sex offender registration is a potential consequence which he indeed was although it was erroneous on the length. . . . [H]e has advised me that he does not wish to withdraw his plea . . . or even make that argument at this point to . . . that's the situation.

It is clear that respondent's plea was understanding, voluntary and accurate. See MCR 6.302; *People v Cole*, 491 Mich 325; 817 NW2d 497 (2012).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly