[Cite as *State v. Stidam*, 2016-Ohio-7906.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 15CA1014 |
| v. | : | DECISION AND JUDGMENT ENTRY |
| AARON STIDAM, | : | |
| Defendant-Appellant. | : | RELEASED: 11/21/2016 |

APPEARANCES:

Timothy Young, Ohio Public Defender and Stephen P. Hardwick, Assistant Ohio Public Defender, Columbus, Ohio for appellant.

David Kelley, Adams County Prosecutor and Michele L. Harris, Assistant Adams County Prosecutor, West Union, Ohio for appellee.

Hoover, J.

{¶ 1} Defendant-appellant Aaron Stidam ("Stidam") appeals from the Adams County Common Pleas Court the portion of his sentence classifying him as a Tier III sex offender. At the age of 22, Stidam was indicted on two counts of rape. The indictment alleged that Stidam committed these offenses when he was a juvenile. Through plea negotiations with the State of Ohio ("State"), Stidam pleaded guilty to two amended counts of sexual battery. The trial court sentenced Stidam to an aggregate total of five years in prison. Also, the trial court designated him a Tier III sex offender.

{¶ 2} Here on appeal, Stidam asserts that his automatic classification as a Tier III sex offender for offenses he committed as a juvenile violates his due process rights and the

prohibitions against cruel and unusual punishment contained in the United States and Ohio Constitutions. Stidam relies on the Ohio Supreme Court's decision in *In re C.P.* 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. In *In re C.P.*, the Ohio Supreme Court ruled that automatic, lifetime sex offender registration for juvenile offenders tried within the juvenile system violated constitutional protections against cruel and usual punishment, as well as constitutional rights to due process. *Id.* at syllabus. Stidam contends that based upon the reasoning of *In re C.P.*, he should not be subject to automatic lifetime sex offender registration requirements for offenses he committed as a juvenile just because he was apprehended for those offenses after the age of 21.

{¶ 3} In evaluating Stidam's claims, we determine that the facts here are distinguishable from those of *In re C.P.* At no time was Stidam tried for his crimes in the juvenile system. Accordingly, the reasoning and analysis presented in the Court's decision in *In re C.P.* is not applicable under the facts here. Therefore, for those reasons and the reasons discussed below, we overrule Stidam's sole assignment of error. We affirm the judgment of the trial court.

## I. Facts and Procedural Posture

{¶ 4} In October 2014, the Adams County Grand Jury indicted Stidam on two counts of rape, first degree felonies, in violation of R.C. 2907.02(A)(1)(b). At the time of the indictment, Stidam was 22 years old. The indictment alleged that the criminal activity took place "[o]n or about and between April 1, 2008 and April 20, 2009[.]" Therefore, Stidam was either 15 or 16 years old at the time when the offenses occurred. The indictment stated that at the time of the offenses the victim was a minor under the age of 10.

{¶ 5} Pursuant to a plea agreement with the State, in September 2015, Stidam pleaded guilty to two amended counts of sexual battery, second degree felonies, in violation of R.C.

2907.03(A)(1). At the change of plea hearing, Stidam admitted on the record that between April 2008 and April 2009, on two occasions, he coerced his eight or nine year old cousin to put his penis in her mouth. The trial court accepted Stidam's guilty pleas and found him guilty of the offenses. Following his guilty pleas, Stidam filed a motion requesting that the trial court (1) declare the adult sex offender classification statutes unconstitutional; and (2) decline to classify him under those statutes. In the motion, Stidam argued that the adult sex offender classifications as applied to him, an adult indicted for crimes he committed as a juvenile, violated his right to due process and constituted cruel and usual punishment. The State filed a response to Stidam's motion.

{¶ 6} The trial court never filed a separate entry overruling Stidam's motion. Instead, during the sentencing hearing on October 2, 2015, the trial court indicated that it declined Stidam's motion. The trial court stated:

> I do find though, however, the arguments made to be very compelling of this
> exception that we have in this case as I see it, but otherwise the court sees that it is
> a tier 3 sex offender registrant and at this time I'm not adopting either individually
> to constitutionally challenge the constitutionality or to challenge the jurisdiction
> of an unconstitutional statue [sic]. I'm not going to at this time in this case adopt
> that invitation. While inviting, certainly inviting as I read the memorandum, at
> this time, the court will decline on that.

The trial court sentenced Stidam to an aggregate five-year prison term. Because of Stidam's violation of R.C. 2907.03, the trial court classified him as a Tier III sex offender.

{¶ 7} Stidam now asserts this timely appeal challenging his classification as a Tier III sex offender.

## II. Assignment of Error

{¶ 8} Stidam assigns the following sole assignment of error for our review:

The trial court erred by requiring Aaron Stidam to register for life as a Tier III Sex Offender for an offense he committed as a child. Fifth, Eighth and Fourteenth Amendments to the United States Constitution; Article I, Sections 9 and 10 of the Ohio Constitution; R.C. 2950.01(G)(1)(a) and 2950.07(B)(1); Sentencing Entry (Oct. 2, 2015); T.p. 15 (Oct. 2, 2015).

## III. Law and Analysis

{¶ 9} In his sole assignment of error, Stidam contends that, as applied to him—an adult indicted for offenses he committed as a juvenile—his Tier III sex offender classification violates the prohibitions on cruel and unusual punishment and the due process protections contained in the United States Constitution and the Ohio Constitution. Stidam primarily relies on the Ohio Supreme Court's recent decision *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. In *In re C.P.*, the Ohio Supreme Court ruled that "[t]o the extent that it imposes automatic, lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile system, R.C. 2152.86 violates the constitutional prohibition against cruel and unusual punishment contained in the [United States Constitution and the Ohio Constitution] and the Due Process Clause [contained in the United States Constitution and the Ohio Constitution]* * *[.]" *Id*. at syllabus. Stidam claims that based on *In re C.P.*, mandatory lifetime registration requirements for offenses committed as a juvenile also violate his right to due process and the prohibitions on cruel and unusual punishment.

{¶ 10} Specifically, Stidam contends that based on the factors examined by the Court in *In re C.P.* we should declare his Tier III sex offender classification unconstitutional for the

following reasons: (1) a child is just as culpable for a sex offense if he is apprehended immediately or seven years later; (2) lifetime registration for a childhood offense is equally severe regardless of when the child is apprehended; (3) the modern juvenile system is almost as punitive as the adult system; (4) lifetime registration inhibits rehabilitation regardless of when a person is charged for a childhood offense; (5) lifetime registration serves the goal of accountability equally poorly regardless of when a child is charged; (6) lifetime registration is a poor deterrent for a child regardless of when charges are filed; and (7) the need for retribution is the same regardless of when a child is charged.

{¶ 11} The State contends that Stidam's classification as a Tier III sex offender should be upheld because (1) he is not a juvenile offender because R.C. 2151.23(I) exempted him from the jurisdiction of the juvenile division of the common pleas court; (2) lifetime sex offender registration neither constitutes cruel and unusual punishment nor violates Stidam's rights to due process and fundamental fairness; and (3) lifetime registration is mandatory pursuant to R.C. 2950.01 et seq.

### A. Ohio's Sex Offender Registration

{¶ 12} In 2007, the General Assembly enacted the Adam Walsh Act, which "repealed Megan's Law, effective January 1, 2008, and replaced it with new standards for sex-offender classification and registration pursuant to the federal Adam Walsh Child Protection and Safety Act, Section 16901 et seq., Title 42, U.S.Code." *Bundy v. State*, 143 Ohio St.3d 237, 2015-Ohio-2138, 36 N.E.3d 158, ¶ 5. The implementation of the Adam Walsh Act transformed the nature of the sex offender registration statutes from remedial to punitive. *State v. Metcalf*, 12th Dist. Warren No. CA2015-03-022, 2016-Ohio-4923, ¶ 19, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 21. "Because the AWA is punitive, and thus imposes

a punishment, the possibility exists that a sexual offender may be deprived of a protected liberty interest by virtue of his classification." *Metcalf* at ¶ 19. This scheme, which the General Assembly codified in R.C. Chapter 2950, divides sex offenders into Tier I, Tier II, and Tier III sex or child-victim offenders. R.C. 2950.01(E) through (G). The sex offender's classification is automatically determined by the offense for which a person is convicted and the judge has no discretion to modify the classification. *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 11. The duration of the offender's obligation to update his or her personal information for the registry, as well as the frequency of that duty, depends upon his or her tier classification.

{¶ 13} For Tier III sex offenders, the act requires registration and verification of the offender's address every 90 days for the remainder of their lifetime. R.C. 2950.06(B)(3). Here, Stidam was convicted of two counts of sexual battery, second degree felonies, in violation of R.C. 2907.03(A)(1). Pursuant to R.C. 2950.01(G)(a), the trial court classified Stidam as a Tier III sex offender. R.C. 2950.01(G)(a) states, " 'Tier III sex offender/child-victim offender' means any of the following: (a) A violation of section 2907.02 or 2907.03 of the Revised Code."

### B. *In Re C.P.*

{¶ 14} In *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729 the Ohio Supreme Court determined:

> To the extent that it imposes automatic, lifelong registration and notification
> requirements on juvenile sex offenders tried within the juvenile system, R.C.
> 2152.86 violates the constitutional prohibition against cruel and unusual
> punishment contained in the Eighth Amendment to the United States Constitution
> and the Ohio Constitution, Article I, Section 9, and the Due Process Clause of the

> Fourteenth Amendment to the United States Constitution and the Ohio
>
> Constitution, Article I, Section 16.

*Id*. at syllabus.

{¶ 15} In *In re C.P.*, 15 year old juvenile was charged in a multi-count indictment including charges of rape and kidnapping with sexual motivation. *Id*. at ¶ 2. The appellant remained in the juvenile system throughout the proceedings. *Id*. at ¶ 6. Eventually, the appellant entered an admission to each charge of the indictment. *Id*. at ¶ 7. The juvenile court found appellant to be a delinquent child and designated him as a serious youthful offender ("SYO") pursuant to R.C. 2152.13(A)(4)(b). The trial court sentenced appellant to a three-year commitment to the Ohio Department of Youth Services and a five-year aggregate prison term. *Id.* The prison term was stayed pending appellant's successful completion of his juvenile sentence. *Id.* Pursuant to R.C. 2152.86, the court classified appellant as a public-registry-qualified-juvenile-offender registrant ("PRQJOR") and automatically classified him as Tier III sex offender. *Id.* at ¶ 8.

{¶ 16} On appeal, appellant argued that R.C. 2152.86 violated his rights to due process and equal protection and the prohibition against cruel and unusual punishment. *Id.* at ¶ 9. Throughout its analysis regarding the cruel and unusual punishment and due process issues, the Court focused on appellant's placement within the juvenile system. The Ohio Supreme Court stated in *In re C.P.* that "the nature of an SYO disposition requires that the juvenile remain under the continuing jurisdiction of a juvenile judge[.]" *Id*. at ¶ 24. The Court explained:

> " 'A juvenile charged as a potential serious youthful offender does not face
>
> bindover to an adult court; the case remains in the juvenile court. Under R.C.
>
> 2152.11(A), a juvenile defendant who commits certain acts is eligible for "a more

restrictive disposition.' That 'more restricted disposition' is a 'serious youthful offender' disposition and includes what is known as a blended sentence—a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. R.C. 2152.13. The adult sentence remains stayed unless the juvenile fails to successfully complete his or her traditional juvenile disposition. R.C. 2152.13(D)(2)(a)(iii). Theoretically, the threat of the imposition of an adult sentence encourages a juvenile's cooperation in his own rehabilitation, functioning as both carrot and stick."

[*State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209] at ¶ 18. Only further bad acts by the juvenile as he is rehabilitated in the juvenile system can cause the stayed adult penalty to be invoked:

Any adult sentence that the trial court imposes through R.C. 2152.13(D)(2)(a)(i) is only a potential sentence—it is stayed pursuant to R.C. 2152.13(D)(2)(a)(iii) "pending the successful completion of the traditional juvenile dispositions imposed." R.C. 2152.13(D)(2)(a)(ii) requires the court to impose a juvenile disposition when it imposes an adult sentence; how the juvenile responds to that disposition will determine whether the stay is lifted on the adult sentence.

*Id*. at ¶ 30.

R.C. 2152.86 changes the very nature of an SYO disposition, imposing an adult penalty immediately upon the adjudication. The juvenile is not given the opportunity to avoid the adult portion of his punishment by successfully completing his juvenile rehabilitation. Instead, he must comply with all of S.B.

10's reporting and notification requirements for Tier III sexual offenders

contained in R.C. Chapter 2950.

*In re C.P.* at ¶¶ 14-16.

{¶ 17} The issue Stidam now presents is whether the holding of *In re C.P.* also applies to offenders who committed offenses as juveniles but were tried as adults because they were apprehended after they turned 21 years old. Stidam presents the same arguments for his contentions that the Tier III classification violates both constitutional due process protections and constitutional prohibitions on cruel and unusual punishment. However, we will address each constitutional argument separately.

### C. Standard of Review

{¶ 18} Stidam's argument here on appeal challenges his Tier III sex offender classification pursuant to R.C. 2950.01(G)(a) as unconstitutional. Such a "challenge focuses on the particular application of the statute." *State v. Carrick*, 131 Ohio St.3d 340, 965 N.E.2d 264, 2012–Ohio–608, ¶ 16. "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts." *State v. Lowe*, 112 Ohio St.3d 507, 861 N.E.2d 512, 2007–Ohio–606, ¶ 17. Here, Stidam challenges the statute as unconstitutional as applied to him, i.e., an adult indicted for offenses he committed as a juvenile.

{¶ 19} "[S]tatutes enjoy a strong presumption of constitutionality." *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 8. "A statute will be upheld unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional." *Id*. We use a de novo standard of review to assess errors based upon violations of constitutional law. *State v. Burgette*, 4th Dist. Athens No. 13CA50, 2014-Ohio-3483, ¶ 10.

**D. Stidam's Classification as a Tier III Sex Offender Does Not Violate His Right to Due Process.**

{¶ 20} First, we will address Stidam's claim that his classification as a Tier III sex offender violates the due process clauses of both the United States and Ohio Constitution. "The right to procedural due process is protected by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution." *State v. Rohrer*, 4th Dist. Ross No. 14CA3471, 2015-Ohio-5333, ¶ 20. (Other citations omitted). In *State ex rel. Hattie v. Goldhardt*, 69 Ohio St.3d 123, 630 N.E.2d 696 (1994), the Ohio Supreme Court addressed due process rights as follows:

> The Fourteenth Amendment forbids a state to 'deprive any person of life, liberty, or property, without due process of law * * *.' Hence, the Due Process Clause applies 'only if a government action will constitute the impairment of some individual's life, liberty, or property.' " 2 Rotunda & Nowak, Treatise on Constitutional Law (1992) 580, Section 17.2.

*Id.* at 125.

{¶ 21} It is clear that Stidam was approximately 15 or 16 years old when he committed the offenses of sexual battery, in violation of R.C. 2907.03(A)(1). Because Stidam was indicted after he turned 21 years old, he was subject to the jurisdiction of the general division of the common pleas court. R.C. 2152.02(C)(3) exempts from the definition of a child "[a]ny person who, while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age * * *." Also, R.C. 2151.23(I), the statute addressing the jurisdiction of the juvenile court, states:

If a person under eighteen years of age allegedly commits an act that would be a

felony if committed by an adult and if the person is not taken into custody or

apprehended for that act until after the person attains twenty-one years of age, *the*

*juvenile court does not have jurisdiction to hear or determine any portion of the*

*case charging the person with committing that act*. In those circumstances, * * *

the case charging the person with committing the act shall be a criminal

prosecution commenced and heard in the appropriate court having jurisdiction of

the offense as if the person had been eighteen years of age or older when the

person committed the act. All proceedings pertaining to the act shall be within the

jurisdiction of the court having jurisdiction of the offense, and that court has all

the authority and duties in the case as it has in other criminal cases in that court.

(Emphasis Added.) Accordingly, Stidam pleaded guilty in the general division of the common

pleas court and was subject to an adult sentence.

{¶ 22} In *In re C.P.*, the Ohio Supreme Court separately analyzed appellant's due process

and cruel and unusual punishment claims. The Court found that "R.C. 2152.86's automatic

imposition of an adult punishment- lifetime reporting and notification- stands in contrast to the

R.C. 2152.14 process for invoking the adult portion of the sentence in an SYO disposition." *Id.*

at ¶ 79. Accordingly, the Court determined that the automatic imposition of lifetime sex offender

registration requirements interfered with a juvenile judge's discretion in an SYO disposition,

resulting in a violation of due process. *Id.* at ¶¶ 83-86. The Court explained and concluded the

following:

Again, we are dealing with juveniles who remain in the juvenile system through

the decision of a juvenile judge—a decision made through the balancing of the

factors set forth in R.C. 2152.12(B)—that the juvenile at issue is amenable to the rehabilitative purpose of the juvenile system. The protections and rehabilitative aims of the juvenile process must remain paramount; we must recognize that juvenile offenders are less culpable and more amenable to reform than adult offenders.

The requirement in R.C. 2152.86 of automatic imposition of Tier III classification on a juvenile offender who receives an SYO dispositional sentence undercuts the rehabilitative purpose of Ohio's juvenile system and eliminates the important role of the juvenile court's discretion in the disposition of juvenile offenders and thus fails to meet the due process requirement of fundamental fairness. In *D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 59, we held that because of the central role of the juvenile judge in a juvenile's rehabilitative process, fundamental fairness did not require the same jury-trial rights for juveniles as we required for adults in *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. In this case, we determine that fundamental fairness is not a one-way street that allows only for an easing of due process requirements for juveniles; instead, fundamental fairness may require, as it does in this case, additional procedural safeguards for juveniles in order to meet of the juvenile system's goals of rehabilitation and reintegration into society.

*Id.* at ¶¶ 84-85.

{¶ 23} Here, Stidam was not determined to be a serious youth offender or even adjudicated within the juvenile system. Thus, the *In re C.P.* decision is clearly distinguishable from the present case. Nonetheless, Stidam contends the automatic, non-discretionary nature of

his Tier III classification for offenses he committed as a juvenile still violates due process. We disagree.

{¶ 24} As the aforementioned citations to *In re C.P.* demonstrate, the Ohio Supreme Court repeatedly referenced the protections and rehabilitative purposes of the juvenile system, as well as the important role of the juvenile judge's discretion in sentencing. Because Stidam was indicted as an adult, those aspects of the juvenile system are simply not applicable here. It was C.P.'s status as an SYO and his disposition in the juvenile system that led the Court to find that automatic, lifetime registration "undercuts the rehabilitative purpose of Ohio's juvenile system and eliminates the important role of the juvenile court's discretion in the disposition of juvenile offender." *Id.* at ¶ 85. Fundamentally contrasting, Stidam was adjudicated in the general division of the common pleas court in the adult court. Although Stidam was indicted for crimes he committed as a juvenile, we find the fact that he was indicted at the age of 22 is crucial; and we decline to extend the reasoning articulated in *In re C.P.* to the facts here. Thus, we conclude that Stidam's Tier III classification does not violate his right to due process.

{¶ 25} Furthermore, R.C. 2151.23(I), the statute requiring Stidam to be subject to adult adjudication, has been upheld as constitutional. The General Assembly enacted R.C. 2151.23(I) as part of a series of amendments to the juvenile statutes in 1997. *State v. Chavis*, 10th Dist. Franklin No. 15AP-557, 2015-Ohio-5549, ¶ 21. "These changes to the statutory scheme effectively removed anyone over 21 years of age from juvenile-court jurisdiction, regardless of the date on which the person allegedly committed the offense." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 14. This rule of law in Ohio and the statutes that codify it has previously been challenged as unconstitutional.

{¶ 26} In *Walls*, the defendant Walls was indicted in 1998 for aggravated murder. *Id*. at ¶ 6. Walls was 29 years old at the time of the indictment. The murder occurred in 1985, when Walls was only 15 years old. *Id*. at ¶¶ 2, 5. "Even though Walls was a minor at the time of the alleged murder, the versions of R.C. 2151.011(B)(6)(c) and 2151.23(I) then in effect allowed the state to try Walls as an adult." *Id*. at ¶ 6. Walls moved to dismiss the indictment, arguing that the 1985 version of R.C. 2151.011(B)(1) should control his disposition rather than the 1997 amended statutes. "Under the 1985 law, Walls could not be tried as an adult until a juvenile court had first bound him over for trial to the general division of the court of common pleas." *Walls* at ¶ 6, citing former R.C. 2151.011(B)(1), 140 Ohio Laws, Part I, 584. On appeal, "[Walls] argued that the court of common pleas, general division, lacked subject matter jurisdiction to hear the case because the amended statutes were unconstitutionally retroactive as they violated his right to a bindover proceeding in juvenile court." *State v. Adams*, 10th Dist. Franklin No. 12AP-83, 2012-Ohio-5088, ¶ 16, citing *Walls* at ¶ 8.

{¶ 27} The Ohio Supreme Court upheld the statutory amendments as constitutional. The Court determined that the statutes did not impair any substantive rights because Walls did not have a substantive right to a juvenile bindover proceeding under prior law. *Walls* at ¶ 19. The Court explained:

> The 1997 changes to R.C. Chapter 2151 did not impair any of Walls's vested rights within the meaning of our retroactivity jurisprudence. Although the 1997 amendments to the juvenile statutes allowed criminal prosecution without the bindover proceeding required under the 1985 law, we cannot characterize this change as anything other than remedial. Even under the law in effect in 1985, Walls was subject to criminal prosecution in the general division of a court of

common pleas if the juvenile court made certain determinations specified by statute. See former R.C. 2151.26(A) and (E), 140 Ohio Laws, Part I, 585–586. Thus, under either the 1985 law or the 1997 law, Walls was on notice that the offense he allegedly committed could subject him to criminal prosecution as an adult in the general division of **838 the court of common pleas. The 1997 law merely removed the procedural prerequisite of a juvenile-court proceeding. Even though they may have an occasional substantive effect on past conduct, "it is generally true that laws that relate to procedures are ordinarily remedial in nature." *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570; see, also, *In re Nevius* (1963), 174 Ohio St. 560, 564, 23 O.O.2d 239, 191 N.E.2d 166.

*Walls* at ¶ 17.

{¶ 28} In *State v. Warren*, 118 Ohio St.3d 200, 2008-Ohio-2011, 887 N.E.2d 1145, the Ohio Supreme Court addressed whether "due process is violated when the defendant receives a mandatory term of life imprisonment for forcible rape of a victim under age 13 when the defendant was 15 years of age at the time of the offense but not prosecuted until he had passed the age of 21." *Id*. at ¶ 1. The defendant specifically challenged R.C. 2152.02(C)(3), which required that because he was not apprehended until after he had reached 21 years of age, he cannot be considered "a child" in relation to the offenses in that case. *Id*. at ¶ 29. The Court also stated that R.C. 2151.23(I) and R.C. 2152.12(J) were relevant to its analysis because the statutes "reiterate the clear legislative intent underlying R.C. 2152.02(C)(3) that once an offender reaches 21 years of age, he is to be prosecuted as an adult, regardless of his age when the acts were committed. *Id.*

{¶ 29} In the lead opinion garnering three votes, the Court, relying on its decision in *Walls*, held that R.C. 2152.02(C)(2), 2151.23(I), and 2152.12(J) did not affect a substantial right because the defendant was on notice that the offenses he allegedly committed could subject him to criminal prosecution as an adult in the general division of the court of commons pleas. *Warren* at ¶ 46, citing *Walls*. Accordingly, the Court overruled Warren's arguments that the challenged statutes violated his rights to due process and fundamental fairness. *Id.* at ¶ 58. The Court concluded:

> *Walls* is not directly on point with this case because it did not involve a due process argument based upon principles of fundamental fairness. However, the similarities between the situation in this case and in *Walls* are substantial, and the essential principles that emerge from *Walls* make it impossible for Warren to prevail on his due process argument.

> Most important, as in *Walls*, the application of the statutes requiring that Warren be tried as an adult in common pleas court (in this case, R.C. 2152.02(C)(3), 2151.23(I), and 2152.12(J)) cannot be viewed as affecting a substantive right because under either the 1985 bindover law or the 1997 law that was applied to him, Warren was on notice that the offense[s] he allegedly committed could subject him to criminal prosecution as an adult in the general division of the court of common pleas. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 17.

> In addition, *Walls* stands squarely in the way of any argument that Warren might make about the lack of a bindover hearing in his case, because although Warren "perhaps remained eligible for retention within the jurisdiction of the juvenile

court under a technical reading of the old statutes, the practical reality is that [he]

had virtually no chance of being kept in the juvenile system." *Walls*, at ¶ 31. As in

*Walls*, any bindover hearing under the statute that was in place in 1988 would

have been simply a procedural step in the process of transferring Warren for

prosecution as an adult. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d

829, at ¶ 41.

Warren does not explicitly argue that he was prejudiced by the absence of a

bindover hearing or that the juvenile court should have retained jurisdiction over

his case. Instead, he claims to have been prejudiced by the trial court's inability to

consider his age at the time of the offenses in sentencing him for rape. Warren

argues that he would have received more favorable treatment if he had been

charged with rape while still a juvenile and that that favorable treatment should

extend to the rape conviction in this case. Those arguments are significantly

undercut by *Walls*, in which this court held that no substantive rights are affected

in this situation. *Id.* at ¶ 19.

*Warren* at ¶¶ 48-51.

{¶ 30} Other Ohio appellate districts have rejected constitutional challenges to the

statutes at issue in *Warren* and *Wells*. *See State v. Scharr*, 5th Dist. No. 2003CA00129, 2004-

Ohio-1631, ¶¶ 27, 29 (rejecting defendant's claims that R.C. 2151.23(I) violated due process and

fundamental fairness because "changing the jurisdiction from the juvenile to the general division

of the common pleas court did not involve any substantive right" and finding no equal protection

violation for R.C. 2151.23(I).); *see also State v. Fortson*, 11th Dist. Portage No. 2011-P-0031,

2012-Ohio-3118 (rejecting defendant's arguments that R.C. 2151.23(I) violated his fundamental

right to be tried in a juvenile court because it would conflict with the holdings in *Walls*, *Schaar*, and *Warren*.) *Adams*, 2012-Ohio-5088 at ¶ 20 (rejecting defendant's claims that R.C. 2152.02(C)(2), R.C. 2151.23(I), and R.C. 2152.12(J) violated principles of due process and equal protection).

{¶ 31} Therefore, considering the critical factual distinctions between this case and *In re C.P.* and the above authority rejecting due process challenges to R.C. 2151.23(I), we do not find that Stidam's Tier III sex offender classification violated his right to due process under either the United States Constitution or the Ohio Constitution.

**D. Stidam's Classification as a Tier III Sex Offender Does Not Violate Constitutional Protections Against Cruel And Unusual Punishment.**

**1. Cruel and Unusual Punishment Under the United States Constitution.**

{¶ 32} Stidam also argues that his mandatory lifetime Tier III sex offender registration requirements, for offenses he committed as a juvenile, violate the prohibitions against cruel and unusual punishments contained in both the United States Constitution and the Ohio Constitution. The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "Central to the Constitution's prohibition against cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' " *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 25, quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). "As applied to juveniles, the United States Supreme Court has held that the Eighth Amendment prohibits the imposition of the death penalty and the imposition of life without the possibility of parole for nonhomicide offenses." *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 8, citing *Roper v. Simmons*, 543 U.S.

551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). More recently, the Eighth Amendment was held to ban mandatory life-without-parole sentences on juveniles in *Miller v. Alabama*, ___ U.S. ____, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

{¶ 33} Addressing challenges based upon cruel and unusual punishments under the Eighth Amendment to the United States Constitution, the Ohio Supreme Court has stated:

> The United States Supreme Court has observed that its cases addressing proportionality fall into two categories. The first involves "challenges to the length of term-of-years sentences given all the circumstances in a particular case." *Graham v. Florida*, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The second involves categorical restrictions that, until *Graham*, applied only in capital cases. The second approach traditionally involves "cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty." *Id*. These restrictions include a prohibition on the death penalty for nonhomicide crimes, for defendants who committed the crime before the age of 18, and for defendants with low mental functioning. *See Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (prohibiting death as a punishment for nonhomicide crimes); *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (prohibiting the death penalty for defendants who committed crimes before turning 18); *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (prohibiting the death penalty for persons with low intellectual functioning).

*Blankenship*, 145 Ohio St.3d 211, 2015-Ohio-4624, 48 N.E.3d 516, at ¶ 18.

{¶ 34} In addition to the Ohio Supreme Court's decision in *In re C.P.*, Stidam also cites the reasoning in the United States Supreme Court cases of *Graham*, *Miller,* and *Roper* in support of his argument. In *Graham*, the Court held that a juvenile offender should not be punished with a sentence of life without parole. The Court concluded:

> In sum, penological theory is not adequate to justify life without parole for juvenile nonhomicide offenders. This determination; the limited culpability of juvenile nonhomicide offenders; and the severity of life without parole sentences all lead to the conclusion that the sentencing practice under consideration is cruel and unusual. This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime. *Roper*, 543 U.S., at 574, 125 S.Ct. 1183.

*Id*. at 74-75.

{¶ 35} In *Miller*, the United States Supreme Court held that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments. The Court explained:

> To start with the first set of cases: *Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing.

Because juveniles have diminished culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." *Graham*, 560 U.S. at 68, 130 S.Ct. at 2026, 176 L.Ed.2d 825. Those cases relied on three significant gaps between juveniles and adults. First, children have a " 'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S., at 569, 125 S.Ct. 1183, 161 L.Ed.2d 1. Second, children "are more vulnerable * * * to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. Ibid. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id*., at 570, 125 S.Ct. 1183, 161 L.Ed.2d 1183.

* * *

We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. Cf. *Graham*, 560 U.S., at ——, 130 S.Ct., at 2030 ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"). By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because that holding is sufficient to decide these cases, we do not consider Jackson's and Miller's alternative argument that the

Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in *Roper*, *Graham*, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Roper*, 543 U.S., at 573, 125 S.Ct. 1183; *Graham*, 560 U.S., at ——, 130 S.Ct., at 2026–2027. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

* * *

Graham, *Roper*, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

*Miller* at 2464-2465, 2469, and 2475.

{¶ 36} In *In re C.P.*, in addition to concluding that the automatic imposition of lifetime registration for juvenile SYO offenders violates due process, the Ohio Supreme Court also found that it violates the prohibitions against cruel and unusual punishments contained in the United States and Ohio Constitutions. *Id.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶¶ 58, 68. The *In re C.P.* court first determined that the national consensus disfavored publication of juvenile sex offenders' personal information. *Id.* at ¶¶ 30-37. Then, the Court conducted an independent review of the factors considered by the United States Supreme Court in *Graham*, including the culpability of the offenders, the nature of the offenses, the severity of the punishment and the penological justifications. *Id.* at ¶¶ 38-58.

{¶ 37} The Court concluded:

In sum, the limited culpability of juvenile nonhomicide offenders who remain within the jurisdiction of the juvenile court, the severity of lifetime registration and notification requirements of PRQJOR status, and the inadequacy of penological theory to justify the punishment all lead to the conclusion that the lifetime registration and notification requirements in R.C. 2152.86 are cruel and unusual. We thus hold that for a juvenile offender who remains under the jurisdiction of the juvenile court, the Eighth Amendment forbids the automatic imposition of lifetime sex-offender registration and notification requirements.

*Id.* at ¶ 58.

{¶ 38} Two Ohio appellate courts have addressed whether automatic Tier III sex offender classification and registration requirements for juvenile offenders who were tried as adults violate due process rights and the prohibitions on cruel and unusual punishment. In *State v. Reidenbach*, 5th Dist. Coshocton No. 2014CA0019, 2015-Ohio-2915, the 17 year old defendant,

Reidenbach, was indicted on twenty counts of rape and twenty counts of gross sexual imposition. *Id.* at ¶ 1. Reidenbach was bound over from the juvenile division to the general division of the common pleas court pursuant to R.C. 2152.10(B) and R.C. 2152.12, at the juvenile division's discretion. *Id*. at ¶ 33. Reidenbach pleaded guilty to three counts of gross sexual imposition. *Id*. at ¶ 2. The trial court sentenced Reidenbach to an aggregate term of ten years in prison. *Id.* The trial court also classified Reidenbach as a Tier III sex offender. *Id.* On appeal, Reidenbach argued that the Tier III sex offender registration requirement under R.C. 2950.01(G)(1) was unconstitutional as applied to juvenile offenders and constituted cruel and unusual punishment. *Id.* at ¶ 15.

{¶ 39} The Fifth District Court of Appeals declined to extend the reasoning in *Graham*, *Miller*, and *In re C.P.* to the facts of that case.[1] The court stated, "The juvenile court provided appellant with due process, holding a probable cause hearing and amenability hearings before making its determination [to bind defendant over to the general division of the common pleas court.]" *Reidenbach* at ¶ 33. The Fifth District also distinguished *In re C.P.* from the facts in *Reidenbach* because "* * *the *C.P.* case applied to juveniles deemed juvenile offender registrants who remained in the juvenile system." *Reidenbach* at ¶ 33.

{¶ 40} In *State v. Martin*, 8th Dist. Cuyahoga No. 102783, 2016-Ohio-922, the Eighth District Court of Appeals also declined to extend the reasoning of *In re C.P.* to a case where a juvenile was bound over to the general division of the common pleas court. *Id*. at ¶¶ 27-29. The defendant, Martin, was 16 years old when he was indicted on two counts of aggravated robbery, two counts of kidnapping, and two counts of rape. *Id.* at ¶ 4. The State filed a mandatory

---

[1] Because appellant failed to challenge the constitutionality of the statutory scheme at the trial court level, the Fifth District reviewed the constitutional issue under appellant's ineffective assistance argument presented in another assignment of error. *Reidenbach* at ¶¶ 16-17.

bindover motion pursuant to Juv.R. 20 and R.C. 2152.12. *Id.* at ¶ 5. The juvenile court held a hearing, found probable cause that Martin committed the offenses, and transferred the case to the adult court. *Id.* Martin pleaded guilty to an amended indictment including one count of rape in violation of R.C. 2907.02(A). *Id.* at ¶ 7. As a part of the Martin's sentence, he was classified as a Tier III sex offender.

{¶ 41} On appeal, Martin argued that automatic Tier III classification for a juvenile offender is unconstitutional because (1) it violated his due process rights and (2) it amounted to cruel and unusual punishment. *Id.* at ¶¶ 9-10. The Eighth District stated that the "* * *problem with Martin's arguments is that he was not *in juvenile court.*" (Emphasis sic). The court stated, "In enacting the mandatory bindover statutes, the legislature 'single[d] out older juvenile' offenders, 'who are potentially more street-wise, hardened, dangerous, and violent.' " *Id.* at 18, quoting *State v. Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010, ¶ 67. The court observed that Martin was not challenging the bindover and Ohio Courts have found the mandatory bindover statute to be constitutional. *Id.* at ¶¶ 19-20.

{¶ 42} The Eighth District found that the reasoning behind the Ohio Supreme Court's decision of *In re C.P.*, i.e, that the automatic, lifetime registration and notifications of R.C. 2152.86 frustrated two of the fundamental elements of juvenile rehabilitation: confidentiality and the avoidance of stigma, did not apply under the facts of that case. *Id.* at ¶¶ 26-27, quoting *In re C.P.* at ¶ 67. With regards to Martin's cruel and unusual punishment arguments, the Eighth District stated: "The flaw in Martin's argument is that he is trying to equate a death sentence or a life sentence without the possibility of parole with having to register as a sex offender for life. It is illogical to do so and, as such, we decline to extend the reasoning in the three United States Supreme Court cases to the facts present here." *Id.* at ¶ 21 (addressing Martin's reliance on

*Roper*, *Graham*, and *Miller*). Accordingly, the court rejected Martin's argument that his Tier III sex offender classification violated his right to due process or constituted cruel and unusual punishment. *Id*. at ¶ 29.

{¶ 43} In the case sub judice, we have already noted the distinguishing fact here compared to the facts of *In re C.P.*, i.e. that Stidam was not adjudicated within the juvenile system, but was indicted as an adult for offenses he committed as a juvenile. This is a critical distinction. Although, considering Stidam's cruel and unusual punishment argument, the facts here present a close question. Because Stidam committed the offenses as a juvenile, he possessed a diminished culpability like the offenders of *In re C.P.*, *Graham*, and *Miller*. However, in *In re C.P.*, the Court relied heavily on the defendant's status within the juvenile system in regards to analyzing the severity of the punishment and the penological justifications under *Graham.*

{¶ 44} Regarding the severity of the punishment, the court in *In re C.P.* found:

> For juveniles, the length of the punishment is extraordinary, and it is imposed at
> an age at which the character of the offender is not yet fixed. Registration and
> notification necessarily involve stigmatization. For a juvenile offender, the stigma
> of the label of sex offender attaches at the start of his adult life and cannot be
> shaken. With no other offense is the juvenile's wrongdoing announced to the
> world. Before a juvenile can even begin his adult life, before he has a chance to
> live on his own, the world will know of his offense. He will never have a chance
> to establish a good character in the community. He will be hampered in his
> education, in his relationships, and in his work life. His potential will be
> squelched before it has a chance to show itself. A juvenile—one who remains
> under the authority of the juvenile court and has thus been adjudged

redeemable—who is subject to sex-offender notification will have his entire life evaluated through the prism of his juvenile adjudication. It will be a constant cloud, a once-every-three-month reminder to himself and the world that he cannot escape the mistakes of his youth.

*Id.* at ¶ 45.

{¶ 45} Here, although Stidam committed his crimes as a juvenile, he was indicted as a 22-year-old adult. The legislature, pursuant to R.C. 2151.23(I), determined that he should be subject to punishment as an adult. Tier III registration requires Stidam to register and verify his address every 90 days for the rest of his life. Stidam plead guilty to a violation of R.C. 2907.03(A)(1), which admits that he engaged in sexual conduct with another as the result of knowingly coercing his victim to submit by any means that would prevent resistance by a person of ordinary resolution. The victim in this case was Stidam's eight to nine year old cousin.

{¶ 46} In examining the severity of the punishment in *In re C.P.*, the Court noted the timing of the punishment and the impact on a SYO juvenile offender tried within the juvenile system. Here, the timing and the impact of the punishment differ because Stidam was indicted some six to seven years after he committed his crimes. Accordingly, the Tier III registration requirements have a distinguishing impact on him as a 22-year-old than the requirements did on a 15-year-old SYO offender tried within the juvenile system.

{¶ 47} Concerning the penological justifications, the court in *In re C.P.* examined the goals of juvenile disposition under R.C. 2152.01 and the considerations set forth in *Graham*: retribution, deterrence, incapacitation, and rehabilitation." The court found that lifetime registration requirements run contrary to the goals of R.C. 2152.01 and the goals articulated in *Graham. In re C.P.* at ¶¶ 47-49. Specifically, the court stated, "We conclude that the social and

economic effects of automatic, lifetime registration and notification, coupled with an increased chance of re-offense, do violence to the rehabilitative goals of the juvenile court process." *Id.* at ¶ 57.

{¶ 48} The purposes of juvenile disposition in R.C. 2152.01(A) are: "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." In comparison, the purposes of adult sentencing in R.C. 2929.11(A) are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Stidam contends that the modern juvenile system is almost as punitive as the adult system. Stidam argues that the penological goals are the same regardless of when the offender was charged.

{¶ 49} Still, the critical distinction between this case and the facts of *In re C.P.* remain significant. The goals of sentencing in the adult court differ, however minute Stidam contends that they are, with the goals of the juvenile system. The stated purpose of the tiered sex offender classification is "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). Recently, the Ohio Supreme Court acknowledged, "that sex-offender registration schemes have been criticized on the ground that they do not actually serve the intended purpose of community protection." *Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, at ¶ 29. However, the court also stated, "the penological grounds for imposing such requirements are still accepted in many quarters and are justified in part based upon the perceived high rate of recidivism and resistance to treatment among sex offenders." *Id.* at ¶ 30.

{¶ 50} Although the facts in *Martin* and *Reidenbach* are distinguishable from the facts at issue here, we find the courts' reasoning and conclusions in those cases persuasive. The uniting connection between *Martin*, *Reidenbach*, and the case sub judice is that statutes, the bindover procedures in *Martin* and *Reidenbach* and R.C. 2151.23(I) here, prevented the defendants from being subject to juvenile system and thus outside the bounds of the Ohio Supreme Court's analysis in *In re C.P.*

{¶ 51} In conclusion, we find that Stidam's Tier III sex offender classification is not cruel and unusual punishment under the Eighth Amendment to the United States Constitution. There is a critical distinction between the concerns of sentencing within the juvenile court and sentencing within the adult court. Therefore, we are not persuaded to extend the ruling of *In re C.P.* and find that automatic Tier III sex offender requirements, for an adult indicted for offenses he committed as a juvenile, constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

## 2. Cruel and Unusual Punishment under Ohio Law

{¶ 52} The Ohio Constitution, Article I, Section 9, contains its own prohibition against cruel and unusual punishment. It provides unique protection for Ohioans.

> The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.

*Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus.

Thus, the Ohio Constitution, Article I, Section 9, provides protection independent of the

protection provided by the Eighth Amendment.

{¶ 53} In its own jurisprudence regarding Article I, Section 9, the Ohio Supreme Court

has recognized that cases involving cruel and unusual punishments are rare, "limited to those

involving sanctions which under the circumstances would be considered shocking to any

reasonable person." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964). Lack of

proportionality is a key factor: "A punishment does not violate the constitutional prohibition

against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to

shock the sense of justice of the community." *State v. Chaffin*, 30 Ohio St.2d 13, 282 N.E.2d 46

(1972), paragraph three of the syllabus.

{¶ 54} The Ohio Supreme Court addressed the appellant's challenges under the Ohio

Constitution in *In re C.P* stated:

> For juveniles who remain in the juvenile system, R.C. 2152.86 is striking
>
> in the disproportionate way it treats PRQJORs. In *In re Agler*, 19 Ohio St.2d 70,
>
> 72, 249 N.E.2d 808 (1969), this court stated that "the decided emphasis [of
>
> juvenile courts] should be upon individual, corrective treatment." We trust judges
>
> to make the important calls in imposing the adult portion of the SYO sentence. In
>
> discretionary SYO cases, juvenile judges determine whether an SYO
>
> denomination is appropriate. But under R.C. 2152.86, the juvenile judge is given
>
> absolutely no discretion over the portion of the juvenile's penalty that could
>
> extend for a lifetime. There is none of the important, individualized work that
>
> juvenile judges do. Instead, a lifetime punishment is imposed with no chance for

reconsideration of its appropriateness for 25 years. Compared to punishments for other juvenile offenders, whose cases are reevaluated when their juvenile disposition ends and at regularly scheduled intervals thereafter, this punishment is disproportionate.

Lack of proportionality is also evidenced by the very public nature of the penalty. The punishment of lifetime exposure for a wrong committed in childhood runs counter to the private nature of our juvenile court system. Confidentiality has always been at the heart of the juvenile justice system. That core principle is trampled by any requirement of public notification. Timothy E. Wind, *The Quandary of Megan's Law: When the Sex Offender is a Child*, 37 J.Marshall L.Rev. 73, 117 (2003). Publicity is even more of a concern for PRQJORs, whose information is disseminated on the Internet.

*Id.* at ¶¶ 61-62.

{¶ 55} In holding that R.C. 2152.86 violated the Ohio Constitution, the court concluded: S.B. 10 forces registration and notification requirements into a juvenile system where rehabilitation is paramount, confidentiality is element, and individualized treatment from judges is essential. The public punishments required by R.C. 2152.86 are automatic, lifelong, and contrary to the rehabilitative goals of the juvenile system. We conclude that they "shock the sense of justice of the community" and thus violate Ohio's prohibition against cruel and unusual punishments."

*Id.* at ¶ 69.

{¶ 56} Stidam asserts a separate argument that his Tier III sex offender registration requirements violate the Ohio Constitution's prohibition on cruel and unusual punishment. Stidam contends that his case is stronger than the appellant in *In re C.P.* because the appellant in that case had the opportunity to seek relief from registration after 25 years.

{¶ 57} In *Blankenship*, the Ohio Supreme Court ruled that Tier II sex offender registration requirements for an adult, who also committed his offenses as an adult, did not violate the Ohio Constitution's prohibition on cruel and unusual punishment. *Id.*,145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 38. Analyzing the appellant's argument under the Ohio Constitution, the court stated:

> We are also mindful that "reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes." *State v. Weitbrecht*, 86 Ohio St.3d 368, 715 N.E.2d 167 (1999). The General Assembly has seen fit to impose registration sanctions in cases involving sex offenses to protect the public. Indeed, such sanctions now are the norm. *People v. Temelkoski*, 307 Mich.App. 241, 262, 859 N.W.2d 743 (2014) ("all 50 states and the federal government have *231 enacted some form of sex offender registration and notification provisions"). They cannot be said to be shocking to the sense of justice of the community.
>
> The stated legislative intent of the General Assembly in enacting S.B. 10 is to protect the public. While some may question whether the registration requirements are the best way to further public safety, questions concerning the wisdom of legislation are for the legislature. " '[W]hether the court agrees with it in that particular or not is of no consequence. * * * If the legislature has the

constitutional power to enact a law, no matter whether the law be wise or otherwise it is no concern of the court.' " (Ellipsis sic.) *Butler v. Jordan*, 92 Ohio St.3d 354, 376, 750 N.E.2d 554 (2001), quoting *State Bd. of Health v. Greenville*, 86 Ohio St. 1, 20, 98 N.E. 1019 (1912). It is undisputed that the General Assembly is " 'the ultimate arbiter of public policy' " and the only branch of government charged with fulfilling that role. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. Blankenship has not met his burden to show that Tier II sex-offender registration requirements are cruel and unusual punishment.

*Id*. at ¶¶ 36-37.

{¶ 58} Similarly, we hold that the concerns that led the Ohio Supreme Court in *In re C.P.* to conclude that the requirements of lifetime registration for SYO juveniles violated the Ohio Constitution's prohibition against cruel and unusual punishment are not present here. By enacting R.C. 2151.23(I), the General Assembly intended for offenders 21 years of age to be prosecuted as adults and subject to adult sentences, regardless of when their acts were committed. An adult sentence includes the automatic imposition of lifetime registration requirements under a Tier III classification. Under the facts at issue here, we are not persuaded to overrule the will of the legislature and make an exception for certain Tier III sex offenders. Therefore, we do not find that Stidam's classification as a Tier III sex offender violates the prohibition against cruel and unusual punishment contained in Article I, Section 9 of the Ohio Constitution.

## IV. Conclusion

{¶ 59} For the foregoing reasons, we overrule Stidam's sole assignment of error. We find that the registration and address-verification requirements for Tier III offenders under R.C. Chapter 2950, as applied to Stidam, an adult indicted for offenses he committed as a juvenile, do not violate his constitutional rights to due process or his constitutional protections against cruel and unusual punishment. Accordingly, the judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds that reasonable grounds exist for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and *Stautberg, J.: Concur in Judgment and Opinion.

For the Court

By:_____
          Marie Hoover, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

*Peter J. Stautberg, Judge of the First Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.